924 F.2d 1492
 32 ERC 1783, 21 Envtl. L. Rep. 20,568
 James M. LOVE; Dave Frohnmayer, Atty Gen'l, for the State
of Oregon, on behalf of the people of the State of
Oregon, Tualatin Valley Fruit Marketing,
Inc., Plaintiffs,
and
Northwest Food Processors Assoc., Plaintiff-Appellee,
v.
William K. REILLY, Administrator, Environmental Protection
Agency, Defendant-Appellant.
 No. 89-35230.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 9, 1990.
Decided Feb. 1, 1991.
 
 Lisa S. Farringer, Atty., U.S. Dept. of Justice, Washington, D.C., for defendant-appellant.
 Susan K. Eggum, McEwen, Gisvold, Rankin & Stewart, Portland, Or., for plaintiffs-appellees.
 Appeal from the United States District Court for the District of Oregon.
 Before WALLACE, FERGUSON and BRUNETTI, Circuit Judges.
 BRUNETTI, Circuit Judge:
 
 
 1
 Northwest Food Processors Association (NWFPA) was one of three plaintiffs who filed for an injunction against the Environmental Protection Agency (EPA) to stop the EPA from banning dinoseb, a pesticide. Plaintiffs were granted the injunction, which was upheld on appeal. The NWFPA then filed a petition for attorney's fees in the district court under the Equal Access to Justice Act (EAJA), 28 U.S.C. Sec. 2412. None of the other plaintiffs requested fees. The district court found the NWFPA entitled to fees under the EAJA. The government appeals.
 
 STANDARD OF REVIEW
 
 2
 The district court's award of attorney's fees under the EAJA is reviewed for abuse of discretion. Oregon Environmental Council v. Kunzman, 817 F.2d 484, 496 (9th Cir.1987). Where a district court's award of fees under the EAJA involves the interpretation of the statute, the district court's interpretation of the EAJA is a question of law reviewed de novo. Id.
 
 FACTS AND PROCEEDINGS BELOW
 
 3
 In the underlying action in this case, the three plaintiffs (James Love, Tualatin Valley Fruit Marketing (TVFM) and NWFPA) sought and obtained a preliminary injunction under the Federal Insecticide, Fungicide and Rodenticide Act partially staying an EPA order to suspend the use of the pesticide dinoseb. Love v. Thomas, 668 F.Supp. 1443 (D.Or.1987). The government appealed the injunction. At this point, several other parties intervened, seeking to stay the injunction pending the appeal. The government did not join in the motion for the stay. The stay was denied. The injunction was ultimately upheld by this court on appeal except for some protective measures imposed by the district court that were not authorized by the statute. Love v. Thomas, 858 F.2d 1347 (9th Cir.1988), cert. denied, 490 U.S. 1035, 109 S.Ct. 1932, 104 L.Ed.2d 403 (1989).
 
 
 4
 NWFPA then requested attorney's fees under the Equal Access to Justice Act, 28 U.S.C. Sec. 2412, for all fees incurred through the conclusion of the previous appeal. James Love and TVFM did not request fees. The same counsel represented all three plaintiffs but no evidence regarding the fee arrangements between plaintiffs and their counsel was offered.
 
 
 5
 The district court granted NWFPA attorney's fees for the entire action, up to and including those incurred during the last appeal. The court increased the fees for a cost of living adjustment and also awarded an amount over the statutory ceiling based on the specialized environmental litigation experience of plaintiffs' counsel. The government appeals.
 
 DISCUSSION
 
 6
 1. Eligibility for Fees.
 
 
 7
 The EAJA provides that a court shall award attorney's fees to an eligible prevailing party in a civil suit brought against the United States unless the government's position is substantially justified or special circumstances make an award unjust. 28 U.S.C. Sec. 2412(d)(1)(A). To be eligible, a party must be an "owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed...." 28 U.S.C. Sec. 2412(d)(2)(B)(ii).
 
 
 8
 The party seeking fees has the burden of establishing its eligibility. Thomas v. Peterson, 841 F.2d 332, 337 (9th Cir.1988). In order to prove its eligibility as an association, NWFPA must show that its net worth was less than $7,000,000 at the time this suit began and that it had less than 500 employees. 28 U.S.C. Sec. 2412(d)(2)(B)(ii). At the time this action was filed, NWFPA had a net worth of $265,000 and seven employees. This qualifies NWFPA as an eligible party under the EAJA.
 
 
 9
 The government seeks to impose an additional burden on associations who apply for fees under the EAJA by requiring the association to prove that each of its members is individually eligible for fees. However, neither the EAJA nor the cases cited by the government place such a burden on all associations.
 
 
 10
 In Unification Church v. Immigration & Naturalization Service, 762 F.2d 1077 (D.C.Cir.1985), the D.C. Circuit held that before an eligible party can recover fees, the court must determine who the real party in interest in the fee litigation is and decide whether that party is eligible for fees. If the real party in interest is ineligible for fees, then the party who filed for fees will not receive them. The appellate court found the Church, not the applying employees, to be the real party in interest because the Church had agreed to pay for the employees' attorney's fees. Id. at 1082. The court then denied the employees' fee request because the Church did not meet the eligibility requirements of the Act. Id. at 1091-92.
 
 
 11
 The real party in interest doctrine does not support the government's argument in this case. In Unification Church, the court found the Church to be the real party in interest in the fee litigation because it bore the financial responsibility of paying the employees' fees. The government mistakenly assumes that because the members of the NWFPA received benefits from the merits determination in this litigation, the members of the NWFPA are also the real parties in interest for the fee award. This is not so. The members of the NWFPA would be the real party in interest in the fee litigation only if they were liable for the NWFPA's attorney's fees. Nothing in the record points to such an agreement. Therefore, the NWFPA has met its burden of proof by establishing that the association satisfies the eligibility requirements set out in 28 U.S.C. Sec. 2412(d)(2)(B).[1]
 
 
 12
 Once a party's eligibility has been proven, an award of fees is mandatory under the EAJA unless the government's position is substantially justified or special circumstances exist that make an award of fees unjust.[2] 28 U.S.C. Sec. 2412(d)(1)(A).
 
 
 13
 The government argues special circumstances exist here because there are other possibly ineligible plaintiffs in the lawsuit who were represented by the same counsel as the eligible plaintiff, NWFPA, who is seeking fees. The government contends that where the same attorneys represent all parties the special circumstance of a "free rider" plaintiff arise--a plaintiff who is ineligible for fees under the EAJA but who ends up paying no fees because the other, eligible plaintiff pays them all through the court-awarded fees. The government argues that when there is a free rider plaintiff involved, an award of fees would be unjust.
 
 
 14
 The burden of proving the special circumstances or substantial justification exception to the mandatory award of fees under the EAJA rests with the government. See Haitian Refugee Center v. Meese, 791 F.2d 1489, 1496 (11th Cir.), vacated in part, 804 F.2d 1573 (1986) (leaving relevant portion intact); Keasler v. United States, 585 F.Supp. 825, 830 (E.D.Ark.1984). Here, the government has failed to show that the other plaintiffs were ineligible, so the existence of a free rider problem has not been established. Further, the government has failed to show that the other two plaintiffs did not have any responsibility for the attorney's fees. As a result, assuming arguendo that the existence of a free rider plaintiff makes an award unjust, the government failed to carry its burden of proof on the special circumstances exception.
 
 
 15
 The government asks this court to adopt a proportionality rule for fees in cases that pose a potential free rider problem. We will not address the merits of a proportionality rule, however, because the government failed to establish that a free rider problem exists here. Without the free rider plaintiff, there is no need for a proportionality rule.
 
 
 16
 In summary, no special circumstances were proven by the government that would defeat the fee award, and the fee award to NWFPA was proper.
 
 
 17
 2. Fees for Opposition to Stay.
 
 
 18
 After the preliminary injunction was granted, the government sought an expedited appeal. Certain intervenors in the case then filed a motion to stay the preliminary injunction pending appeal, which was denied. The district court ordered the government to pay for the 46.9 hours of work incurred by plaintiffs' attorneys on the opposition to the stay. The government argues that the attorney's fees attributable to opposing the intervenors' motion to stay the injunction should not be recoverable against the government because the government took no position on the motion to stay. We agree.
 
 
 19
 The Fifth Circuit dealt with a similar situation in Avoyelles Sportsmen's League v. Marsh, 786 F.2d 631 (5th Cir.1986). Avoyelles involved the interpretation of the Clean Water Act, which authorizes the court to award "costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." 33 U.S.C. Sec. 1365(d). The court held that attorney's fees are only appropriate for portions of the litigation made necessary by government opposition to legitimate claims of the party seeking the award. Id. at 632. The court further held that an award is not appropriate for a phase of the litigation in which the party seeking an award was opposed only by other, non-governmental parties, and put the burden on the plaintiffs to show that "their claimed expenses were incurred in opposing improper government resistance to their rightful demands." Id. at 636 (emphasis added).
 
 
 20
 While this case involves the EAJA, not the Clean Water Act, we find the Fifth Circuit's reasoning in Avoyelles persuasive. The Avoyelles court found that where plaintiffs are litigating an issue and are opposed only by private defendants, a fee award against the government would be "manifestly unfair and contrary to historic fee-shifting principles." Id. Similarly, an award against the government for fees incurred by NWFPA in opposing the stay is unjust because the government did not join the intervenors' motion to stay, and NWFPA has not shown that the attorney's fees attributable to fighting the stay were incurred in opposing government resistance. Consequently, the award of fees by the district court for the opposition to the stay was error.
 
 
 21
 3. Amount of Fee Award.
 
 
 22
 The EAJA places a ceiling of $75 an hour for attorney's fees "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. Sec. 2412(d)(2)(A). The district court exceeded the $75 limit, citing both an increase for cost of living and the lead counsel's prior pesticide litigation experience. The government does not dispute the cost of living increase, but does argue that the trial court abused its discretion in increasing the fee based on the experience of Mr. Chadsey, the plaintiffs' attorney.
 
 
 23
 The Supreme Court considered what Congress meant by a "special factor" in Pierce v. Underwood, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). The Court concluded that Congress intended for courts to exceed the statutory limit only if there was a limited availability of "attorneys having some distinctive knowledge or specialized skill needful for the litigation in question." Id. at 572, 108 S.Ct. at 2553. As examples of such attorneys, the court cited lawyers who have an identifiable practice specialty such as patent law. Id. "Where such qualifications are necessary and can be obtained only at rates in excess of the $75 cap, reimbursement above that limit is allowed." Id. The district court's decision to exceed the $75 cap is reviewed for abuse of discretion. Id. at 571, 108 S.Ct. at 2553.
 
 
 24
 We discussed Underwood in Pirus v. Bowen, 869 F.2d 536 (9th Cir.1989). In Pirus, we approved an award in excess of $75 an hour to an attorney who specialized in social security cases. We held that three requirements must be satisfied before the court can exceed the statutory limit. Id. at 541. First, the attorney must possess distinctive knowledge and skills developed through a practice specialty. Secondly, those distinctive skills must be needed in the litigation. Lastly, those skills must not be available elsewhere at the statutory rate. Id. at 541-42.
 
 
 25
 Environmental litigation is an identifiable practice specialty that requires distinctive knowledge. See Animal Lovers Volunteer Assoc. v. Carlucci, 867 F.2d 1224, 1226 (9th Cir.1989). Mr. Chadsey's affidavit indicates that he has been involved in a number of court and administrative matters involving the use of pesticides. He is familiar with the Federal Insecticide, Fungicide and Rodenticide Act and the areas of expert witness testimony necessary to assemble a complicated insecticide case in the short period dictated by the need for a preliminary injunction. The district court correctly found that Chadsey's prior insecticide litigation experience, coupled with his experience in obtaining federal preliminary injunctions, amounted to "distinctive knowledge" under Pirus.
 
 
 26
 However, the trial court made no specific finding on the issue of the availability of other attorneys with environmental expertise at the statutory rate. In order to exceed the statutory limit, the specialized skills required for the case must not be available elsewhere at the statutory rate. Pirus, 869 F.2d at 542.[3] Therefore, we remand the case to the district court for a further finding as to the availability of attorneys in the area with similar skills who would take the case at the statutory rate.
 
 
 27
 4. Attorney's Fees on Appeal.
 
 
 28
 NWFPA requests attorney's fees for this appeal. We have held that a prevailing party is only eligible for fees incurred in litigating attorney's fees if the Government's position in the fee litigation is not substantially justified. National Wildlife Federation v. Federal Energy Regulatory Commission, 870 F.2d 542, 547-48 (9th Cir.1989). However, the Supreme Court recently ruled to the contrary in Immigration and Naturalization Service v. Jean, --- U.S. ----, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). In Jean, the Supreme Court held that the district court's finding that the government's position lacks substantial justification "operates as a one-time threshold" for fee eligibility. Id. 110 S.Ct. at 2320. The Court concluded that "only one threshold determination [of substantial justification] for the entire civil action is to be made." Id. at 2319.
 
 
 29
 Thus, under the EAJA, the prevailing party is automatically entitled to attorney's fees for any fee litigation once the district court has made a determination that the government's position lacks substantial justification. The district court found that the Government's position on the merits of this case was not substantially justified. Under Jean, this entitles NWFPA to attorney's fees for this appeal. The district court is directed to determine a reasonable fee on remand. See id. at 2320.
 
 CONCLUSION
 
 30
 The district court's award of fees to the NWFPA for the action, excluding the opposition to the motion to stay, is affirmed. The district court's award of fees for 46.9 hours of work spent on the opposition to the motion to stay is reversed. We remand the fee award over the statutory limit to Mr. Chadsey for a determination of the availability of other specialized attorneys in the area. Finally, NWFPA is entitled to attorney's fees for this appeal in an amount to be determined by the district court on remand.
 
 
 31
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 
 
 32
 WALLACE, Circuit Judge, concurring in part and dissenting in part:
 
 
 33
 I concur in the decision of the majority that Northwest Food Processors Association (Association) is entitled to an award of trial and appellate attorneys' fees and expenses under the Equal Access to Justice Act (Act), 28 U.S.C. Sec. 2412. I agree with the majority that this amount should not include the fees incurred in opposing the motion to stay. I also agree a remand is necessary for a specific finding on availability. My only quarrel is with the amount of the fee award, and I therefore dissent from that part of section 3 of the opinion.
 
 
 34
 * As the majority observes, the Act imposes a ceiling of $75 an hour on all awards of attorneys' fees, "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. Sec. 2412(d)(2)(A). This limit expresses the "congressional intention to constrain litigants from hiring high-priced lawyers with the expectation that the government will pick up the tab." Barry v. Bowen, 825 F.2d 1324, 1332-33 (9th Cir.1987).
 
 
 35
 The Supreme Court recently interpreted this fee limit provision in Pierce v. Underwood, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (Pierce ), and concluded that because the market rates for attorneys' services are necessarily determined by the relative supply and demand for their services, "the limited availability of qualified attorneys for the proceedings involved" cannot mean what it appears to mean at first glance. 28 U.S.C. Sec. 2412(d)(2)(A); Pierce, 487 U.S. at 571-72, 108 S.Ct. at 2553-54. To rely on only the bare text of the provision, the Court stated, would mean that if the rates for lawyers in the relevant city exceeded $75 an hour, the market-minimum rate would govern instead of the statutory cap. The $75 an hour ceiling would then be totally ineffective. See Pierce, 487 U.S. at 572, 108 S.Ct. at 2553. The Court concluded that this was not Congress's intention, and narrowly interpreted the "limited availability" exception language. Id. ("Congress thought that $75 an hour was generally quite enough public reimbursement for lawyers' fees," whatever the market rate).
 
 
 36
 The Court explained,
 
 
 37
 We think [the exception language] refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question--as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language.
 
 
 38
 Id. The limited availability of suitably qualified trial and appellate counsel is therefore not sufficient to justify an award above the $75 ceiling. See id.; Animal Lovers Volunteer Association v. Carlucci, 867 F.2d 1224, 1226 (9th Cir.1989) (Animal Lovers ). Thus, it is not enough to allege, as Chadsey does in his affidavit, that "[t]here are few, if any, other lawyers in private practice in Oregon who have had my experience in such [environmental] matters."
 
 
 39
 In order to justify an exception to the $75 an hour fee cap, the Association must instead satisfy a stringent three-part test we imposed in Pirus v. Bowen, 869 F.2d 536 (9th Cir.1989) (Pirus ). In Pirus, we followed the Supreme Court's interpretation of the "special factor" language in Pierce, and held that a plaintiff must first show that the attorney has developed a practice specialty such as patent law, and that he or she possesses distinctive knowledge and skills developed through that specialty. Id. at 541; see also Pierce, 487 U.S. at 572, 108 S.Ct. at 2553. Second, this distinctive knowledge and skill must be necessary to the litigation for which enhanced fees are sought. Pirus, 869 F.2d at 541-42. Finally, the plaintiff must demonstrate that similar skills could not have been acquired at the statutory rate. Id.
 
 
 40
 The majority acknowledges that the Association has failed to satisfy the third prong of the test, and remands on that basis. Maj. op. at 1497. The majority apparently believes, however, that the Association has made the first two showings. I disagree, because the record does not demonstrate either that Chadsey had developed a recognizable practice specialty or that this specialty was necessary to the litigation in question. I deal with each of these points in turn.
 
 A.
 
 41
 The majority cites Animal Lovers as support for its assertion that "[e]nvironmental litigation is an identifiable practice specialty." Maj. op. at 1496. Animal Lovers, however, does not so hold. Our exact words were, "[e]nvironmental litigation may indeed require 'distinctive knowledge or specialized skill' and constitute 'an identifiable practice specialty.' " Animal Lovers, 867 F.2d at 1226, quoting Pierce, 487 U.S. at 572, 108 S.Ct. at 2553 (emphasis added). Without deciding that environmental litigation qualified as a specialty, we held only that the plaintiff had not shown counsel had specialized in environmental work. See id. Because we clearly decided the case on the attorney's lack of emphasis in the environmental field, our indefinite language regarding environmental litigation as a specialty is mere dicta.
 
 
 42
 Therefore, circuit precedent does not require us to label "environmental litigation" a practice specialty. Moreover, the Supreme Court's language in Pierce convinces me that such a broad legal field cannot qualify as a specialized practice area warranting payment in excess of $75 an hour. Under Pierce, only those practice areas sufficiently akin to patent law justify fee enhancement as a practice specialty. See Pierce, 487 U.S. at 572, 108 S.Ct. at 2553; Pirus, 869 F.2d at 541. In broadly stating that "environmental litigation" qualifies as such a practice specialty, the majority strays too far from the limiting constraints placed on the Act by the Court in Pierce.
 
 
 43
 In a decision that recognized and reinforced these constraints, the Tenth Circuit recently rejected the argument that Social Security benefits law was a qualifying specialized practice area, stating that "merely because some scholarly effort and professional experience is required to attain proficiency in a particular practice area does not automatically require enhancement of the [$75 rate]." Chynoweth v. Sullivan, 920 F.2d 648, 650 (10th Cir.1990) (Chynoweth ). In rejecting the specialty argument, the court persuasively distinguished our decision in Pirus, in which we acknowledged that the attorneys had developed a specialty in a specific, "highly complex area of the Social Security Act." Pirus, 869 F.2d at 542. In fact, the district court in that case had observed that it was "no routine disability case." Id. Devotion to narrow, complex areas of the law, as in Pirus, can sometimes result in the development of a specialty akin to that of a patent lawyer. On the other hand, the mere categorization of an attorney as a "specialist" in one of the myriad broad practice areas that dot our legal landscape does not suffice. General environmental law parallels general benefits law in its broad and unlimited nature. I would therefore follow the reasoning of the Tenth Circuit, and hold that because the field of environmental law "is not beyond the grasp of a competent practicing attorney with access to a law library and the other accoutrements of modern legal practice," it does not qualify as a specialty. Chynoweth, 920 F.2d at 650; cf. Esprit Corp. v. United States, 15 Cl.Ct. 491, 494 (1988) (Esprit Corp.) (stating that the area of federal procurement law is not a qualifying practice specialty).
 
 
 44
 I conclude that circuit precedent requires a plaintiff to make two showings when seeking to satisfy the "practice specialty" prong of the Pirus test. First, the attorney must show that he or she is actually specializing in the legal field at issue. See Pirus, 869 F.2d at 542 (approving enhanced fees for attorneys who had devoted themselves to acquiring "familiarity and expertise" with a specific, complex portion of the Social Security Act). The attorney must be a true specialist, not merely an occasional dabbler in a certain legal field. Counsel must therefore have restricted a substantial amount of his or her practice to a similar extent as is done by specialists in the patent law field. See Pierce, 487 U.S. at 572, 108 S.Ct. at 2553.
 
 
 45
 Second, the area encompassed by the asserted practice specialty must be similar in complexity to the patent law field. Thus, litigation in a true specialty field will require those who are fully devoted to, and expert in, that field. See Pirus, 869 F.2d at 541 (requiring expertise with a complex statutory scheme and the service of a particular class of clients). This requirement serves to differentiate a true specialty from the great majority of practice areas that are "not beyond the grasp of a competent practicing attorney with access to a law library." Chynoweth, 920 F.2d at 650.
 
 
 46
 Turning to this case, I do not believe additional fees are justified on account of any "special factor." 28 U.S.C. Sec. 2412(d)(2)(A). As stated above, I disagree with the majority's blanket assertion that the general area of environmental litigation is a specialty sufficiently akin to patent law to justify a fee enhancement. Moreover, the Association has not made either showing in its attempt to prove that Chadsey's specific practice qualifies for an exception to the fee cap.
 
 
 47
 First, the evidence presented simply does not support a determination that Chadsey is a litigation specialist in the manner required by the Supreme Court in Pierce. In his affidavit, Chadsey states that he had been "involved in a number of cases" dealing with environmental matters, many involving pesticides. In addition, he contends that he is "familiar with" several pesticide statutes, and the corresponding areas of expert witness testimony. On this basis, the majority opinion approves additional fees. Maj. op. at 1496-1497. The evidence in the record, however, is insufficient to prove that Chadsey devoted a substantial portion of his practice to these types of matters. In my mind, merely having been "involved in" similar cases and "familiar with" the necessary statutes is not enough. Chadsey was therefore not a true specialist in the asserted practice area.
 
 
 48
 The Association's claims also fail to satisfy the second prong of my specialty analysis, because the asserted specialty field of environmental pesticide litigation is not sufficiently complex to justify an analogy to the patent law area. I am sure Chadsey is qualified to try cases in the area of environmental pesticide litigation, and that he performed well in this case. He was not, however, a specialist as required by law. See Pierce, 487 U.S. at 572, 108 S.Ct. at 2553; Pirus, 869 F.2d at 541. To rule otherwise would only "serve to emasculate the effectiveness of the $75 cap as each practice group could argue that it possesses a 'specialized skill.' " Esprit Corp., 15 Cl.Ct. at 494.
 
 B.
 
 49
 Aside from the failure to demonstrate specialization, no finding was made by the district court that Chadsey's skills were necessary to this case. See Pierce, 487 U.S. at 572, 108 S.Ct. at 2553 (skills must be "needful for the litigation in question"). The majority fails to deal with this omission. In order to qualify for a fee enhancement under the Act, the Association bears the burden of showing that the specialty skills are "needed in the litigation." Pirus, 869 F.2d at 542. It is true that the district court found that Chadsey's prior experience was "helpful," and that he was able to prepare more efficiently than a less experienced attorney. The Supreme Court, however, has held that the efficiency and ability of counsel does not qualify as a "special factor" under the Act. See Pierce, 487 U.S. at 573, 108 S.Ct. at 2554. And a finding that Chadsey's skills were "helpful" does not qualify as a finding that these skills were "necessary." The Association has therefore failed to satisfy the second prong of the Pirus test, a failure that prevents them from receiving a fee enhancement.
 
 II
 
 50
 Because the Association has not met the three-part burden imposed on it by Pirus, it has failed to prove why the portion of the fee above $75 an hour should be shifted to the taxpayers. Accordingly, I would hold that the district court abused its discretion by increasing the fee award on the grounds that Chadsey's experience was a qualifying "special factor" under the Act. See Pierce, 487 U.S. at 571, 108 S.Ct. at 2553 (reviewing the amount of a fee award for abuse of discretion).
 
 
 
 [1]
 The government also cites United States v. Lakeshore Terminal and Pipeline Co., 639 F.Supp. 958 (E.D.Mich.1986), as support for its real party in interest argument. That case is inapposite. There the court pierced the corporate veil and held that the parent of the subsidiary plaintiff was the real party in interest because the operations of the two companies overlapped substantially. Id. at 962. In this case, there have been no allegations that the administration and operation of the members' businesses overlaps with the operation of the NWFPA itself
 
 
 [2]
 The district court found the government's position regarding the banning of dinoseb was not substantially justified. The government does not appeal this part of the district court's decision
 
 
 [3]
 The affidavit of Mr. Chadsey is the only evidence in the record on this issue. The court made no finding as to whether his statement that there are few other lawyers in Oregon with his expertise in pesticide litigation is sufficient to establish that there were no attorneys willing to take the case for $75 an hour