159 F.3d 597
 333 U.S.App.D.C. 7
 NATIONAL ASSOCIATION OF MANUFACTURERS, Appellee,
v.
DEPARTMENT OF LABOR, Appellant.
 No. 97-5157.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Feb. 17, 1998.
Decided Nov. 3, 1998.
 
 Appeal from the United States District Court for the District of Columbia (No. 95cv00715).
 Katherine S. Gruenheck, Attorney, U.S. Department of Justice, argued the cause for appellant. On the briefs were Frank W. Hunger, Assistant Attorney General, Mary Lou Leary, U.S. Attorney at the time the briefs were filed, and Michael Jay Singer, Attorney, U.S. Department of Justice.
 Behnam Dayanim argued the cause for appellee. With him on the brief was Hamilton Loeb.
 Before: WILLIAMS, HENDERSON and GARLAND, Circuit Judges.
 GARLAND, Circuit Judge:
 
 
 1
 The United States Department of Labor ("DOL") appeals from an award of attorneys' fees to the National Association of Manufacturers ("NAM") under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A). If NAM were considered as a separate entity, it would unquestionably be eligible for an EAJA award. Some of its members, however, would not be. DOL's principal contention is that a trade association suing on behalf of its members is only eligible for attorneys' fees if both the association and its members satisfy the statutory criteria.
 
 
 2
 We decline to adopt such a per se rule. Although there may be cases in which an association's eligibility for an award will depend upon the eligibility of its members--for example, when an association is merely litigating as a "front" for those members--there is no evidence that this is such a case. Accordingly, we affirm the award of attorneys' fees and remand the case for further proceedings consistent with this opinion.
 
 
 3
 * NAM is an incorporated trade association representing over 13,000 employers in various industries. Its members range from small start-up companies to large multinational corporations. On April 14, 1995, NAM filed a complaint in district court challenging regulations adopted by DOL to implement congressional amendments to the H-1B visa program, which allows American companies to employ aliens in certain "specialty occupations." See 8 U.S.C. § 1101(a)(15)(H)(i)(b). To establish its standing to sue, NAM asserted it was acting as a representative of its members, whose ability to employ aliens was burdened by the regulations. See App. 9 (Pl.'s Compl., p 11).
 
 
 4
 After both sides moved for summary judgment, the district court held that DOL had promulgated six components of the H-1B program without complying with the notice and comment requirements of the Administrative Procedure Act, 5 U.S.C. § 553(b)(3), and granted partial summary judgment for NAM. The court granted summary judgment for DOL on the remaining issues. Neither side appealed the decision on the merits, and NAM filed an application for an award of attorneys' fees and other expenses under the EAJA.
 
 The EAJA provides that a court
 
 5
 shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ..., unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.
 
 
 6
 28 U.S.C. § 2412(d)(1)(A). The EAJA defines an eligible "party" under the Act to include "any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 ... and which had not more than 500 employees at the time the civil action was filed...." Id. § 2412(d)(2)(B)(ii). Thus, a court must grant an EAJA award: (1) for fees "incurred," (2) by an eligible "party," (3) who "prevail[s]" against the government, (4) unless the position of the government was "substantially justified," or (5) unless "special circumstances" make an award unjust.
 
 
 7
 In the district court, the government opposed NAM's request for fees on the second and fourth grounds: that NAM was not an eligible party because certain of its members, who the government said were the "real parties in interest" in the litigation, exceeded the statute's net worth and employment ceilings; and that the government's position in the litigation was substantially justified. The government did not dispute below, and does not contest here, that NAM prevailed in the litigation for purposes of the Act. See, e.g., Maduka v. Meissner, 114 F.3d 1240, 1241 (D.C.Cir.1997) ("A party has 'prevailed' if: (1) the party received a significant part of the relief it sought; and (2) the lawsuit was a catalytic, necessary or substantial factor in obtaining that result.") (citation omitted).
 
 
 8
 The district court rejected the government's arguments. See National Ass'n of Mfrs. v. United States Dep't of Labor, 962 F.Supp. 191 (D.D.C.1997). The court held that NAM was eligible for attorneys' fees because the association itself met the eligibility criteria, and because the EAJA applies those criteria to associations rather than to their individual members. The court declined to apply a "real party in interest" exception merely because NAM's members stood to benefit from a favorable ruling in the litigation. See id. at 194-95 & n. 5. The court also rejected the argument that DOL's position in the litigation was substantially justified, noting that a "government agency that overtly disregards the notice requirements of the APA cannot credibly argue that [its] underlying actions were substantially justified." Id. at 197. The district court concluded that NAM was entitled to$41,145.59 in fees and other expenses, a figure which DOL does not dispute.
 
 II
 
 9
 On appeal, DOL does not challenge the district court's determination that the government's position was not "substantially justified." It does, however, contest the court's determination that NAM was an eligible "party" under the EAJA. And it seeks to raise two additional defenses it acknowledges it did not directly raise below: that "special circumstances" make the award of fees here unjust, and that NAM has not "incurred" fees because it has been represented by a law firm, acting pro bono, that has agreed to forego any fees unless NAM receives an EAJA award. While we generally review a district court's award of attorneys' fees under the EAJA only for an abuse of discretion, see Pierce v. Underwood, 487 U.S. 552, 563, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), we review an award de novo insofar as it rests on conclusions of law, such as an interpretation of the statutory terms that define eligibility for an award, see Love v. Reilly, 924 F.2d 1492, 1493 (9th Cir.1991); see generally Pierce, 487 U.S. at 558, 108 S.Ct. 2541.
 
 
 10
 We consider the government's contention that NAM is not an eligible party in this Part, and address the government's two additional defenses in Part III below.A
 
 
 11
 As noted above, the EAJA states that an "association" is an eligible party if it had, at the time the action was filed, a net worth no greater than $7,000,000 and a work force no larger than 500 employees. The government does not dispute that NAM, itself, meets both the net worth and employment criteria of the statute. See App. 13-14 (NAM Aff. pp 6-7). NAM, on the other hand, does not dispute that "some--although not all--of its members and affiliates possess net worths and/or numbers of employees that would place them outside the definition of 'party' contained in the EAJA." App. 21 (NAM Letter).
 
 
 12
 An association may sue the government either to redress its own injuries or to redress injuries to its members. See United Food & Commercial Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 551-52, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996). An association's standing to sue in the latter circumstance is generally referred to as "associational" or "representational" standing. See, e.g., Pennell v. City of San Jose, 485 U.S. 1, 7 n. 3, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988). DOL argued below that when an association relies only on representational standing, the association's members are the real parties in interest to the litigation. In those circumstances, DOL contended, a court must look behind the association and, if a single member has assets or employees above the listed ceilings, deny an EAJA award. In this court, DOL's opening brief rephrases the argument somewhat, arguing for a "rebuttable presumption" that an association's members are the real parties in interest in a suit litigated by the association on their behalf. "Rebuttable," however, may not be the most accurate way to characterize the presumption the government seeks. In its reply brief, the government explains that the burden this presumption would impose on trade associations "to show complete independence and freedom from their members is virtually impossible to meet." DOL Reply Br. at 14.
 
 
 13
 Whether cast as a rebuttable or irrebuttable presumption, the difficulty with the government's argument is that it conflicts with the plain language of the statute, which expressly lists as eligible for fees any "association ... the net worth of which did not exceed $7,000,000 ... and which had not more than 500 employees." 28 U.S.C. § 2412(d)(2)(B)(ii) (emphasis added). The statute thus places its eligibility ceilings on the association itself. It does not, for example, refer to the net worth "of whose members" but to the "net worth of which"--the antecedent of "which" being "association." There is no mention anywhere in the statute or legislative history of a need to consider the net worth or employment totals of an association's individual members.[1]
 
 
 14
 The government does not dispute, moreover, that an association is eligible for a fee award without regard to the eligibility of its members in at least some circumstances--namely, when it sues for injury to the association itself. But if an association is properly assessed on its own merits in some circumstances, the government's argument requires more than just an unusual definition of the single word "association." Rather, it requires the insertion of an entire "except" clause: e.g., that an association is eligible if its net worth does not exceed $7,000,000, "except if it is suing in a representational capacity, in which case the net worth of each of its members must also not exceed $7,000,000." There is, of course, no such "except" clause in the statute, and we are without authority to insert one.
 
 
 15
 Nor is there any reason to believe Congress intended such an exception. "Representational" suits by associations, including trade associations, were well-recognized by the time the EAJA was passed in 1980. See, e.g., Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 342, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) ("If the Commission were a voluntary membership organization--a typical trade association--its standing to bring this action as the representative of its constituents would be clear under prior decisions of this Court."). Many of the best-known cases brought by associations had been brought in their representational capacities. See, e.g., id.; Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 40, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); Warth v. Seldin, 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); National Motor Freight Ass'n v. United States, 372 U.S. 246, 247, 83 S.Ct. 688, 9 L.Ed.2d 709 (1963); NAACP v. Button, 371 U.S. 415, 428, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 459, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). Because we ordinarily presume that Congress was aware of relevant Supreme Court precedent at the time it considered legislation, see North Star Steel Co. v. Thomas, 515 U.S. 29, 34, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995); Cannon v. University of Chicago, 441 U.S. 677, 699, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), it would be surprising if Congress had intended to exclude such a wide swath of cases from the EAJA without mentioning that fact anywhere in the statute or legislative history.
 
 
 16
 In addition, were we to accept DOL's argument, nothing in the statute would permit us to limit it to "trade" as compared to other kinds of membership associations.[2] Thus, for example, an environmental organization suing in a representational capacity would be barred from an EAJA recovery if any of its individual members were personally wealthy--even if the organization received no more than a small dues payment from each of its members. See Gregory C. Sisk, The Essentials of the Equal Access to Justice Act: Court Awards of Attorney's Fees for Unreasonable Government Conduct (Part One), 55 LA. L.REV. 217, 319 (1994). DOL does not expressly dispute that its interpretation of the eligibility criteria would reach such cases. Instead, the government suggested at oral argument that such cases should not concern us because environmental groups are "largely" tax-exempt § 501(c)(3) organizations, which are excepted from the EAJA's net worth ceiling by another clause of the statute.[3] DOL cites no support for this assertion and, at least as to one of the country's most well-known environmental groups, it is not true. See Sierra Club Membership Information (visited Sept. 23, 1998) http: //ww2.sierraclub.org/member/main.html. In any event, environmental associations are not the only ones at issue. There are many associations, including non-profits, that are not "trade" associations but nonetheless do not qualify for § 501(c)(3) status. See, e.g., Regan v. Taxation with Representation, 461 U.S. 540, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983) (affirming that non-profit groups engaged in substantial lobbying activities do not qualify for § 501(c)(3) treatment). Again, it would be surprising if Congress had intended the EAJA to exclude suits brought by such organizations in a representational capacity, without mentioning the possibility at all.[4]
 
 
 17
 Notwithstanding the absence of statutory language or legislative history supporting its reading of the EAJA, DOL contends that reading is necessary to conform the statute to Congress' underlying purpose--to assist parties "for whom cost may be a deterrent in vindicating their rights." DOL Br. at 24 (quoting H.R. R EP. No. 96-1418, at 10 (1980), U.S.Code Cong. & Admin.News 1980, p. 4988); see also Unification Church v. INS, 762 F.2d 1077, 1082 (D.C.Cir.1985). Although such an appeal to congressional purpose might be persuasive if the statutory terms were ambiguous or open-ended, see, e.g., Florida Power & Light Co. v. Lorion, 470 U.S. 729, 737, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985), here they are neither. Nor do we agree that our interpretation subverts Congress' purpose. We simply have no indication that Congress intended to exclude small associations representing large members from the benefits conferred by the EAJA. Indeed, the government does not contest that Congress intended small associations with large members to benefit from the EAJA when such associations sue on their own behalf. Nothing in the words or legislative history of the statute indicates a congressional intention to draw the distinction the government would have us draw.
 
 
 18
 Two other Circuits have reached the same conclusion we do regarding the meaning of the EAJA. See Texas Food Indus. Ass'n v. United States Dep't of Agric., 81 F.3d 578, 581 (5th Cir.1996); Love, 924 F.2d at 1494. One Circuit, the Sixth, has taken an opposing view. See National Truck Equip. Ass'n v. National Highway Traffic Safety Admin., 972 F.2d 669 (6th Cir.1992). But the Sixth Circuit takes the argument even further than DOL would go, concluding that an association is ineligible for a fee award if the aggregated net worth and employment of all its members together exceed the ceilings, even if no individual member exceeds them on its own. Perhaps because the National Truck approach would eliminate fee awards for virtually any association suing on behalf of its members, the government has disavowed reliance on the analysis of that case. See DOL Br. at 16.
 
 
 19
 The decision in National Truck was based in part on the congressional purpose argument we rejected above. The Sixth Circuit also contended that Congress' legislative intent can be divined from the fact that the EAJA exempts agricultural cooperatives and tax-exempt organizations from the net worth criterion. See supra note 3. Based on that exemption, the court concluded that Congress "intended for those organizations only not to be aggregated under the net worth equation." 972 F.2d at 674.
 
 
 20
 We disagree. The Sixth Circuit is correct that EAJA's exemption of cooperatives and tax-exempt organizations implies that Congress intended only those organizations to be exempt from the net worth criterion. But the exemption does not imply that Congress further intended the net worth of the remaining organizations to be calculated on an aggregated basis. The statute says that a cooperative or a tax-exempt organization may be an eligible party "regardless of the net worth of such organization," 28 U.S.C. § 2412(d)(2)(B)(ii) (emphasis added). It does not say that such an organization may be an eligible party regardless of the aggregated net worth of its individual members. In short, "[n]either the statute nor its legislative history suggest[s] that the special eligibility rule for agricultural cooperatives and non-profits was motivated by concerns about ineligibility resulting from the aggregation of employees and assets." Texas Food, 81 F.3d at 581.
 
 
 21
 Finally, we consider DOL's argument that Unification Church v. INS, 762 F.2d 1077 (D.C.Cir.1985), which first applied the "real party in interest" doctrine to EAJA fee applications, compels us to look behind the association to its individual members. In Unification Church, three EAJA-eligible plaintiffs sought attorneys' fees after they prevailed in an action to force the Immigration and Naturalization Service to let them remain in the United States. The fourth plaintiff, the Unification Church, was ineligible for fees because it employed more than 500 people. Under an agreement among the plaintiffs, who were represented by the same counsel, the Church assumed responsibility for all legal fees. Because the Church was the only party that would pay fees in the absence of an award, and thereby the only party that would benefit if there were an award, the court held that "the Church can fairly be characterized as the real party in interest." Id. at 1082. And because the Church was the real party in interest, but was ineligible for an award, all of the fee applications were denied. To hold otherwise, we said, "would open the door for the wholesale subversion of Congress's intent to prevent large entities from receiving fees." Id. This statement, the government contends, supports its argument here that, to prevent "subversion of Congress's intent," we must bar an association from recovering when it sues on behalf of its large members.
 
 
 22
 There is, however, an important distinction between the government's "real party in interest" argument in this case, and the way Unification Church employed that doctrine. Here, DOL argues that the fact that an association is litigating to benefit its members should be enough to require us to look to the qualifications of those members. But in Unification Church, we were trying to determine the " 'real party in interest' with respect to fees," not with respect to the merits of the underlying litigation. Id. at 1081 (emphasis added). We made clear that the fact that the individual plaintiffs "have rights at stake in the underlying case does not alleviate our concerns, since the individual appellants have nothing at stake in the award of fees...." Id. at 1082. And our holding was that, "where the fee arrangement among the plaintiffs is such that only some of them will be liable for attorneys' fees, the court shall consider only the qualification ... of those parties that will be themselves liable for fees if court-awarded fees are denied." Id. (emphasis added). Indeed, in a subsequent case, we stressed that "the essential language" in Unification Church was " 'fee arrangement among the plaintiffs,' " and that "the essential question" in our "real party in interest" analysis is "whether there is some relationship or agreement among all or some of the various plaintiffs, either explicit or implicit, permitting a plaintiff, which would 'obviously not qualif[y] for an award, ... [to] receive free legal services if its side were to prevail.' " AARP v. EEOC, 873 F.2d 402, 405 (D.C.Cir.1989); accord Love, 924 F.2d at 1494 (holding that individual members of association are real parties in interest only if they are liable for association's attorneys' fees).
 
 
 23
 In short, although the "real party in interest" doctrine does bar fee awards from which only ineligible parties would benefit, it does not require us to rewrite the statute to exclude eligible associations whenever their litigation benefits ineligible members. Whether we consider the government's argument as urging a per se rule, a presumption, or an application of the "real party in interest" doctrine, we reject the proposition that NAM is barred from receiving attorneys' fees merely because it has members who could not receive them.
 
 B
 
 24
 In rejecting the government's broad contention, we do not mean to suggest that courts should never look behind an association to examine the eligibility of its individual members. As even NAM conceded at oral argument, if an association were no more than a "front" or a "sham" through which ineligible entities pursued litigation and recovered fees, it would be appropriate to pierce the associational veil and look to the real parties in interest. Unification Church established the principle that the "real party in interest" doctrine applies when an ineligible party pays the fees for an eligible party, and we agree with the government that the doctrine may properly extend to an ineligible non-party (such as an association member) who pays the fees of a party (such as an association).[5] We also would not preclude the possibility that the principle could apply when an ineligible non-party controls the litigation decisions of an eligible party, even if it does not finance the litigation itself. See, e.g., United States v. Lakeshore Terminal & Pipeline Co., 639 F.Supp. 958, 962 (E.D.Mich.1986) (rejecting award to otherwise-eligible corporation because of "active involvement" in litigation by corporation's ineligible parent).
 
 
 25
 But none of those things occurred here. There was no agreement by any of NAM's members to pay the costs of this litigation. NAM submitted a sworn declaration to that effect, see App. 28 (NAM Supp. Decl. p 9), and the district court so found, see National Ass'n of Mfrs., 962 F.Supp. at 194. But for the willingness of NAM's attorneys to take the case pro bono, their fees would have been paid out of the association's general operating budget. See App. 28 (NAM Supp. Decl. p 9). Hence, there is no concern that NAM's ineligible members will be the beneficiaries of an award of fees to the association. See Unification Church, 762 F.2d at 1082.[6]
 
 
 26
 Lacking evidence of a formal fee arrangement, the government implicitly argues that the dues paid by NAM's members are equivalent to the fee agreement in Unification Church. See DOL Reply Br. at 6 n.1, 7, 10. When an association uses general revenues derived from membership dues to finance litigation, however, it does not transform its members into real parties in interest. Most important, payment of membership dues does not render a member liable for the costs of a litigation. The membership dues argument is particularly inapt in this case; membership dues clearly have not financed this litigation because NAM's attorneys have not charged NAM for their work.
 
 
 27
 There is also no support for the government's veiled accusation that members of NAM controlled this litigation and that NAM merely acted as their puppet. Founded in 1895, NAM plainly was not established for the purposes of conducting this law suit. The association is an independent corporation, independently managed by its own officers and executives. See App. 27 (NAM Supp. Decl. p 4). Its Senior Vice President filed an affidavit which declared that "NAM--and not its individual members or affiliates--retained complete responsibility and authority to direct the actions of its counsel throughout this litigation." Id. at 29 (NAM Supp. Aff. p 11). The district court made a specific evidentiary finding that NAM's individual corporate members "played no part in the legal prosecution or decision-making processes of this case." 962 F.Supp. at 194. And at oral argument, DOL conceded it had no evidence that EAJA-ineligible members directed or controlled this litigation.
 
 
 28
 The government seeks to avoid the consequences of this lack of evidence through its rebuttable presumption argument. DOL asserts that it is "NAM's burden to establish its real party status," not the government's burden to disprove it. DOL Reply Br. at 13. Thus, DOL contends, not only must NAM show that it is itself eligible under the net worth and employment criteria, but it also has the burden of showing that its individual members are not the real parties in interest.
 
 
 29
 Even if NAM initially did bear such an additional burden, which is questionable,[7] NAM satisfied it by submitting a declaration which stated, under penalty of perjury, that its members were neither liable for the costs of the litigation nor in control of it. See App. (NAM Supp. Decl. pp 9, 11). At least in the absence of any reason to doubt such a declaration, a fee applicant is not required to put on further evidence to support this kind of negative proposition. At that point, if not earlier, it was the government's burden to come forward with evidence to the contrary. It never did so.
 
 
 30
 But, DOL complains, it is not to blame for failing to come forward with evidence that NAM's members financed or controlled the litigation. Rather, the fault lay with the district court, which "abused its discretion by ruling on NAM's fee application without first affording the government an opportunity to conduct discovery on the question whether NAM was the real party in interest." DOL Br. at 23. The problem with this complaint is that the government never sought discovery that would have carried the day for it on that question.
 
 
 31
 The only discovery request DOL made to NAM was a letter asking whether any of NAM's individual members "do not meet the definition of 'party' under EAJA," and if so, to identify them, their net worth and total number of employees, and the proportion of NAM's membership they represent. App. 23-24. In response, NAM's counsel "stipulate[d] ... that some--although not all--of its members and affiliates possess net worths and/or numbers of employees that would place them outside of the definition of party contained in the EAJA." App. 21 (NAM Letter). The response concluded: "Unless you notify me to the contrary, I will understand that this stipulation responds sufficiently to your inquiry." Id. at 22. The government did not send a reply, nor file a motion to compel discovery.
 
 
 32
 The government did argue in its opposition to NAM's fee application that "[a]t a minimum, plaintiff should be required to provide (1) full information concerning its members' net worths and numbers of employees; and (2) any evidence it contends establishes that NAM, rather than NAM's members, is the real party in interest in this litigation." Id. at 19-20 (Def.'s Opp. to Pl.'s Attorneys' Fees Applic. at 13-14 [hereinafter DOL Opp.] ). But NAM had already stipulated that some of its members exceeded the net worth and employment ceilings; the additional information DOL sought in this regard would not have made a material difference to its position. Similarly, the evidence NAM "contends establishes that NAM ... is the real party in interest" is nothing more than the absence of a fee or control arrangement--a point NAM also had already covered in its filed declaration. Because the government never sought any specific evidence calculated to unearth financing or control of the litigation by individual members of the association,[8] and because it offers no reason to suspect any such evidence exists, we have no reason to look behind the associational form to determine NAM's eligibility for a fee award.
 
 III
 
 33
 In addition to its contention that NAM is not an eligible party for purposes of the EAJA, the Department of Labor seeks to raise two further defenses it concedes it did not directly raise below: that "special circumstances" make the award of fees unjust, and that NAM has not "incurred" fees because it has been represented by a law firm, acting pro bono, that has not charged NAM for its services.
 
 
 34
 * The EAJA disqualifies an applicant from an award of fees if "the court finds that ... special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The government contends that the wealth and size of some of NAM's corporate members constitute such a "special circumstance," because it would be unjust to award attorneys' fees to NAM when its members could have afforded to litigate on their own.
 
 
 35
 The government "acknowledge[s] that [it] did not specifically refer to the 'special circumstances' provision below." DOL Reply Br. at 16 (emphasis added). In fact, the government did not mention the provision at all, and the district court twice noted that "DOL did not assert the existence of any special circumstances that would make a fee award unjust or inequitable." 962 F.Supp. at 193; see also id. at 196 n. 10. Although we have some discretion to consider new arguments on appeal, see Singleton v. Wulff, 428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), we do not do so in the absence of "exceptional circumstances" that require such consideration "to achieve a just resolution." Kattan v. District of Columbia, 995 F.2d 274, 278 (D.C.Cir.1993); see also District of Columbia v. Air Florida, Inc., 750 F.2d 1077, 1085 (D.C.Cir.1984).[9]
 
 
 36
 There are no exceptional circumstances here. DOL contends we should entertain its special circumstances argument because "the substance ... is virtually the same as [the] EAJA eligibility argument," namely, that it would be contrary to Congress' intent to permit associations representing the interests of large companies to receive EAJA awards. DOL Reply Br. at 18. To the extent this argument really is merely a reprise of the statutory eligibility argument, we see no reason for reaching a different result, or--more accurately--for reaching to reach a result on an issue not raised below. The term "special circumstances" does not shed any more light on Congress' intent regarding the treatment of associations than does the subsection that defines eligible parties, and we decline to use that term to excise most representational standing cases from the coverage of the EAJA. It is also particularly difficult to regard the "circumstances" advanced by the government here as "special," since they exist in such a broad class of cases.
 
 
 37
 But contrary to DOL's contention, an argument based on the EAJA's "special circumstances" defense is not really the same as one based on its eligible party criteria. The defense was not intended to be applied across-the-board to an entire class of cases, but rather to prevent the injustice of granting an award in a particular case. As DOL itself notes, Congress intended the "special circumstances" defense to "give[] the court discretion to deny awards where equitable considerations dictate an award should not be made." H.R.REP. NO. 96-1418, at 11, U.S.Code Cong. & Admin.News 1980, p. 4990. We must be particularly cautious about reviewing for the first time on appeal an argument that properly is first addressed to the equitable discretion of the district court. If the argument had first been made below, we would review the lower court's decision only for an abuse of discretion. See, e.g., United States v. 27.09 Acres of Land, More or Less, 43 F.3d 769, 771, 772 (2d Cir.1994); cf. Pierce, 487 U.S. at 559, 108 S.Ct. 2541 (holding that "substantially justified" defense is reviewed for abuse of discretion). By first bringing its claim here, DOL effectively asks us to weigh the equities de novo. To consider such a request, however, would be to encourage parties to forum shop between courts based on their assessment of which has the longer "foot."[10] We decline to provide such encouragement, and hold that DOL has waived its "special circumstances" defense by not raising it below.
 
 B
 
 38
 The government also argues that NAM is not entitled to a fee award because it has been represented by a law firm, acting pro bono, that has agreed to forego payment unless NAM receives an EAJA award. This means, the government argues, that NAM has not "incurred" any fees, as required for eligibility under the statute.
 
 
 39
 The government does not contend that parties may never receive fees if they are represented by pro bono counsel, and acknowledges the many cases in which this and other courts have held that parties may recover EAJA fees to pay such counsel. See DOL Br. at 26; see, e.g., AARP, 873 F.2d at 406; Ed A. Wilson, Inc. v. General Servs. Admin., 126 F.3d 1406, 1409 (Fed.Cir.1997); SEC v. Comserv Corp., 908 F.2d 1407, 1415 (8th Cir.1990); Watford v. Heckler, 765 F.2d 1562, 1567 n. 6 (11th Cir.1985); Cornella v. Schweiker, 728 F.2d 978, 987 (8th Cir.1984). Instead, DOL asks that we limit fee awards to two kinds of pro bono litigation: "where the client is indigent or where the case is classified as public interest litigation." DOL Br. at 26.
 
 
 40
 NAM does not qualify as indigent. Nor, contends the government, can this case be classified as "public interest" litigation. Yet, while the government assures us there are "clear standards" by which to make the latter classification, DOL Reply Br. at 19, it does not tell us what they are. Would it make a difference in the government's classification scheme if this lawsuit, which sought to make it easier for certain aliens to obtain employment in the United States, had been brought by an immigrants' rights organization rather than an employers' organization? The government's briefs do not help us to resolve the question.
 
 
 41
 We need not struggle with this issue here, however, as DOL concedes it "did not squarely raise this argument below." DOL Reply. Br. at 19. Indeed, not only did the government not make this argument, it argued that "[t]he fact that [NAM's counsel] allegedly agreed to handle this matter pro bono does not affect the analysis." App. 18 (DOL Opp. at 12) (emphasis added).[11] Because the government cites no exceptional circumstances to justify its failure to raise the pro bono argument before the district court, we decline to address it for the first time on appeal. See Kattan, 995 F.2d at 278.
 
 IV
 
 42
 For the reasons stated, we affirm the decision of the district court awarding attorneys' fees and other expenses to the plaintiff. NAM also requests an award of fees and expenses for this appeal under the same provisions of the EAJA. As the United States has not objected, we grant the request and remand this matter to the district court for a determination of reasonable attorneys' fees and expenses incurred on appeal. See Love, 924 F.2d at 1497; see also Commissioner v. Jean, 496 U.S. 154, 159-60, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990).
 
 
 
 [1]
 For example, the legislative history directs that " 'net worth' [be] calculated by subtracting total liabilities from total assets," and that "[i]n determining the value of assets, the cost of acquisition rather than fair market value should be used." H.R.REP. NO.96-1418, at 15 (1980), U.S.Code Cong. & Admin.News 1980, pp. 4953, 4994. But it never instructs that in doing this calculation, the net worth of an association's individual members should be considered
 
 
 [2]
 Indeed, to support its argument that NAM's members are the real parties in interest, the government cites a case involving the NAACP for the proposition that an association "is but the medium through which its individual members seek to make effective the expression of their views." DOL Br. at 16 (citing NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 459, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958))
 
 
 [3]
 The EAJA provides that "an organization described in section 501(c)(3) of the Internal Revenue Code of 1986 (26 U.S.C. § 501(c)(3)) exempt from taxation under section 501(a) of such Code, or a cooperative association as defined in section 15(a) of the Agricultural Marketing Act (12 U.S.C. § 1141j(a)), may be a party regardless of the net worth of such organization or cooperative association...." 28 U.S.C. § 2412(d)(2)(B)(ii). There is no corresponding exemption from the statute's employment ceiling
 
 
 [4]
 Were we to accept DOL's reading of the statute, there also would be no basis for applying it only to "associations," rather than to all parties eligible for fees under the EAJA. By DOL's logic, for example, a "unit of local government," otherwise eligible under 28 U.S.C. § 2412(d)(2)(B)(ii), would be disqualified from a fee award if it sued the United States on behalf of its citizens and any one citizen had a net worth exceeding the statutory ceiling
 
 
 [5]
 NAM argues that the principle should apply only to parties. Although it is true that only parties were involved in Unification Church and AARP, neither opinion suggested that a non-party could not be unmasked as the real party in interest
 
 
 [6]
 The government points to a section of NAM's accounting report, see App. 39-40, which indicates that "coalitions" of NAM members occasionally fund "special projects." DOL speculates that this case may be such a special project. In reply, NAM states that the referenced coalitions primarily engage in lobbying, that none has been involved in any litigation, and that none was involved in this case. See NAM Br. at 17 n.12. Neither the accounting report, nor anything else in the record, contradicts NAM's representation to this court
 
 
 [7]
 Cf. Love, 924 F.2d at 1494 (holding that although an association has the burden of establishing its own eligibility, it does not bear the burden of proving that each of its members is individually eligible for fees). DOL cites AARP, 873 F.2d at 404, and Unification Church, 762 F.2d at 1081-82, for the proposition that NAM bears the burden of making an affirmative showing that it is the real party in interest. DOL Br. at 14. But neither case even mentions the issue of burden of proof
 
 
 [8]
 The government complains, for example, that the district court granted the fee award "without knowing whether there was an overlap in management teams and/or counsel for [NAM] and one or more of its ineligible members." DOL Br. at 22. Yet, DOL never sought to discover evidence of such an overlap. In the face of NAM's declaration to the contrary, see App. 27 (NAM Supp. Decl. p 4), there was no reason for the district court to presume an overlap existed
 
 
 [9]
 United States Department of Labor v. Rapid Robert's Inc., 130 F.3d 345 (8th Cir.1997), cited by DOL, is not to the contrary. Although in that case the Eighth Circuit did consider the "special circumstances" defense even though DOL had not raised it below, it did so as an "exception to the general rule" in order to avoid a "miscarriage of justice." Id. at 348 (internal quotation marks omitted). In Rapid Robert's, the court found that as a result of the district court's ruling on the merits, which DOL did not appeal, the defendant had "reaped a windfall by escaping its duty to pay for clear violations of a valid statute." Id. at 349. "To add to that windfall by requiring the government to pay attorneys' fees," the court held, "would be patently unjust." Id. DOL makes no such argument about the consequences of the district court's merits ruling here, nor, as noted below, are there any other exceptional circumstances that would justify abrogating the general rule against considering issues for the first time on appeal
 
 
 [10]
 See Gee v. Pritchard, 36 Eng.Rep. 670, 679 n.1 (Ch. 1818) (quoting SELDEN, TABLE TALK):
 [E]quity is according to the conscience of him that is Chancellor, and as that is larger or narrower, so is equity. ' Tis all one, as if they should make his foot the standard for the measure we call a Chancellor's foot; what an uncertain measure would this be! One Chancellor has a long foot, another a short foot, a third an indifferent foot; 'tis the same thing in the Chancellor's conscience.
 
 
 [11]
 The government made this statement in the course of arguing what might be described as the "inverse" of its current contention: the fact that NAM was represented pro bono should not, DOL contended, "automatically entitle a trade association to fees when it would otherwise be ineligible because of its members resources and size." App. 19 (DOL Opp. at 13)