# United States Court of Appeals for the Federal Circuit

---

**BASR PARTNERSHIP, WILLIAM F. PETTINATI, SR., TAX MATTERS PARTNER,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

---

2017-1925

---

Appeal from the United States Court of Federal Claims in No. 1:10-cv-00244-SGB, Judge Susan G. Braden.

---

Decided: February 8, 2019

---

THOMAS A. CULLINAN, Eversheds Sutherland (US) LLP, Atlanta, GA, argued for plaintiffs-appellees. Represented by REBECCA M. STORK.

MICHAEL J. HAUNGS, Tax Division, United States Department of Justice, Washington, DC, argued for defendant-appellant. Also represented by JACOB EARL CHRISTENSEN, DAVID A. HUBBERT, GILBERT STEVEN ROTHENBERG.

CARLTON M. SMITH, New York, NY, for amici curiae Harvard Federal Tax Clinic, Philip C. Cook Low-Income Tax Clinic of Georgia State University.

————————————

Before PROST, *Chief Judge,* WALLACH and CHEN, *Circuit Judges.*

Opinion for the court filed by *Chief Judge* PROST.

Dissenting opinion filed by *Circuit Judge* WALLACH.

PROST, *Chief Judge.*

This appeal concerns an order from the U.S. Court of Federal Claims awarding $314,710.69 to BASR Partnership ("BASR") under 26 U.S.C. § 7430 ("I.R.C. § 7430") for its reasonable litigation costs incurred in connection with a tax determination from a Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA") proceeding. The United States ("Government") appeals the order. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3). We affirm.

I

The Pettinati family owned a commercial printing company, Page Printing, from 1982 until they sold it in 1999. Before completing the sale, the Pettinatis hired the now-defunct law firm of Jenkens & Gilchrist to advise them on an investment strategy that potentially had tax benefits arising from the sale of their business. *See BASR P'ship v. United States*, 795 F.3d 1338, 1340 (Fed. Cir. 2015); J.A. 133, 987. As part of the "tax planning strategy by attorney Erwin Mayer of Jenkens & Gilcrest [sic], P.C.," J.A. 1071, the Pettinatis formed BASR, a general partnership, J.A. 1071, 2392–402. BASR assumed certain U.S. Treasury Note obligations, which increased its cost basis. J.A. 54. Further, each of the BASR partners—William Pettinati, Sr., his wife, Virginia Pettinati, and the gift trusts belonging to their two sons, William Pettinati, Jr. and Andrew Pettinati—contributed all their shares in Page Printing to

BASR in June 1999.  J.A. 55, 82.  Two months later, BASR sold 100% of its stock in Page Printing to Nationwide Graphics, Inc. for $6,898,245.  J.A. 55.  When offset against its overstated cost basis, however, BASR realized a gain of only $263,934.  *Id.*  On their 1999 individual returns, the Pettinati partners reported their shares of this under-stated gain passed through to them from BASR.  J.A. 1231, 1266, 1280.  In other words, "by creating the BASR Partnership, the Pettinatis greatly reduced the tax liability arising from the sale of their printing business."  *BASR P'ship*, 795 F.3d at 1340.

The Internal Revenue Service ("IRS") did not confront the Pettinatis regarding the overstated basis until a decade later.  In January 2010, the IRS issued to BASR's tax matters partner, William Pettinati, Sr., a final partnership administrative adjustment ("FPAA"), which disallowed the tax benefits generated from BASR's 1999 tax filing.  J.A. 61–72.  In April 2010, Mr. Pettinati filed a petition and summary judgment motion in the U.S. Court of Federal Claims ("trial court") challenging the FPAA as untimely under I.R.C. § 6501(a), which provides a three-year statute of limitations.  J.A. 45–60.  At that time, BASR had "zero assets," J.A. 1956, and had filed its last partnership return in 1999, J.A. 317.

While BASR's filings were pending before the trial court, the BASR partners offered the Government $1.00 to settle all of the adjustments that the Government made in the FPAA.  J.A. 1953–54.[1]  The Government declined the offer.  Government's Br. 56–57.

---

[1]    Although BASR argues that it submitted the qualified offer in conjunction with its partners, Appellee's Br. 11, I.R.C. § 7430(g)(1)(A) specifies that a qualified offer "is made by the taxpayer."  Because partnerships do not pay income taxes, *see* I.R.C. § 701, we do not regard BASR

In September 2013, the trial court granted summary judgment for BASR, holding that the FPAA was untimely issued. *BASR P'ship v. United States*, 113 Fed. Cl. 181, 194 (2013). This court affirmed. *BASR P'ship*, 795 F.3d at 1350.

In March 2016, BASR, by and through Mr. Pettinati, Sr., moved the trial court for litigation costs under I.R.C. § 7430(c)(4)(E). J.A. 1934–41. The trial court granted BASR's motion in part and awarded BASR $314,710.69 in litigation costs. *BASR P'ship v. United States*, 130 Fed. Cl. 286, 313–14 (2017).[2]

## II

This appeal concerns the interplay between two statutory schemes—I.R.C. § 7430, which is a fee-shifting statute, and TEFRA, 26 U.S.C. § 6221 et seq.

I.R.C. § 7430(a) provides that a "prevailing party" may be awarded reasonable litigation costs incurred in connection with a court proceeding brought against the United States in connection with "the determination, collection, or refund of any tax, interest, or penalty under this title."

---

as an offeror, *see* Oral Arg. at 32:16–32:20, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2017-1925.mp3 (Q: "Is the partnership a taxpayer?" A: "No.").

[2] In its briefing before this court, BASR moved to strike portions of the Government's opening brief that BASR claims are disputed. Appellee's Br. 12. The Government responds that "there is no requirement that the factual statements in an appellate brief must be based on specific findings of fact determined after a trial." Government's Reply Br. 31–32. When reviewing the briefs, we remain cognizant that a party may present the facts in the light most favorable to that party. BASR had the opportunity in its response brief to dispute the Government's factual account. The motion is denied.

Generally, a party must "substantially prevail" with respect to the amount in controversy or the issues presented, as provided by I.R.C. § 7430(c)(4)(A).[3] But special rules apply when a taxpayer makes the Government a monetary offer to settle the tax dispute and the Government rejects the offer.  In such cases, if the taxpayer's liability under the court's judgment turns out to be less than or equal to the offer that the taxpayer made to the Government to settle the tax dispute, the taxpayer will be treated as a "prevailing party" if it is also "[a] party to [the] court proceeding."[4]

---

[3]    We do not consider BASR's alternative argument that it is a prevailing party under I.R.C. § 7430(c)(4)(A), because BASR pursued a different route to an award before the trial court, specifically, I.R.C. § 7430(c)(4)(E).   J.A. 1940–41 (BASR's memorandum in support of its motion for litigation costs under I.R.C. § 7430(c)(4)(E)); Oral Arg. at 36:33–37:10.  The trial court, therefore, did not address the issue.  We view the argument as forfeited.

[4]    I.R.C. § 7430(c)(4)(E) ("qualified offer rule") recites:

> A party to a court proceeding . . . shall be treated as the prevailing party if the liability of the taxpayer pursuant to the judgment in the proceeding (determined without regard to interest) is equal to or less than the liability of the taxpayer which would have been so determined if the United States had accepted a qualified offer of the party under subsection (g).
>
> (ii)  Exceptions.—This subparagraph shall not apply to.—
>
> (I)  any judgment issued pursuant to a settlement; or
> (II)  any proceeding in which the amount of tax liability is not in issue . . . .

I.R.C. § 7430(c)(4)(E).

There are two exceptions, however, to this so-called qualified offer rule. The qualified offer rule does not apply (1) when the court's judgment issues pursuant to a settlement or (2) when the amount of tax liability is not "in issue" during the court proceeding. *See* I.R.C. § 7430(c)(4)(E)(ii).

TEFRA, enacted in 1982, enables the IRS to correct errors on a partnership's tax return in a single, unified proceeding.[5] *United States v. Woods*, 571 U.S. 31, 38–39 (2013). Under TEFRA, the IRS first initiates proceedings at the partnership level to adjust partnership items. *Id.* at 39. Once the tax treatment of the partnership items at the partnership level becomes final, administratively or judicially, the IRS next initiates a partner-level proceeding to make any resulting computational adjustments in the tax liability of the individual partners. *See id.* The IRS directly assesses most computational adjustments against the partners, "bypassing deficiency proceedings and permitting the partners to challenge the assessments only in post-payment refund actions." *Id.*[6]

---

[5] Although partnerships do not pay federal income tax, I.R.C. § 701, they must still report their tax items ("partnership items") on an annual information return, I.R.C. § 6031(a).

[6] The Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 1101, 129 Stat. 584, 625, repealed TEFRA and reformed the partnership auditing process such that the tax attributable to any audit adjustments made by the IRS to the partnership items will be assessed and collected from the partnership at the partnership level, rather than from the partners in the partner-level proceedings. This change does not apply to this case because the Act is effective only for partnership taxable years beginning after December 2017. *See* Bipartisan Budget Act of 2015 § 1101, 129 Stat. at 638.

## III

With this legal framework in mind, we turn to the Government's arguments. The Government advances five independent challenges to the trial court's order. The first is that (1) BASR does not qualify for litigation costs under I.R.C. § 7430(a) because it is not a "party" and therefore cannot be a "prevailing party." Government's Br. 17–18. Next, it argues that, even if BASR were considered to be a "party," it still could not receive litigation costs under I.R.C. § 7430(a) because (2) it did not pay or incur any such costs, and (3) the amount of tax liability was not "in issue" during the TEFRA partnership-level court proceeding. Government's Br. 24, 45. Lastly, the Government argues that even if BASR were statutorily eligible to receive an award for litigation costs under I.R.C. § 7430(a), the trial court erred by (4) failing to apply the real-party-in-interest doctrine and by (5) abusing its discretion in granting the award. Government's Br. 51, 56.

## A. Prevailing Party

To qualify as a "prevailing party" under I.R.C. § 7430(a), the taxpayer must necessarily be a "party" to a § 7430(a) court proceeding—here, the TEFRA partnership-level judicial proceeding. *See* I.R.C. § 7430(c)(4)(E); 26 U.S.C. § 6226 (2009) ("I.R.C. § 6226"). The Government argues that BASR could not have been a party to the proceeding because it is the partnership entity, and as a legal matter, only the individual *partners* can be parties to a TEFRA proceeding. Government's Br. 40. The trial court disagreed and determined that BASR was indeed a party to the TEFRA proceeding. Although the trial court relied largely on an inapplicable treasury regulation to reach its conclusion,[7] the trial court's error was harmless because,

---

[7] Treasury Regulation § 301.7430-5(g) applies only to costs incurred and services performed in cases in which

in our view, other reasons support a finding that BASR was a party.

Whether I.R.C. § 6226 prohibits a partnership from being a party to a TEFRA partnership-level court proceeding is a legal question requiring statutory interpretation. We review the trial court's statutory interpretation de novo. *Salman Ranch Ltd. v. United States*, 573 F.3d 1362, 1370 (Fed. Cir. 2009). We focus our inquiry on the statutory language. *Electrolux Holdings, Inc. v. United States*, 491 F.3d 1327, 1330 (Fed. Cir. 2007) (explaining that "[s]tatutory interpretation begins with the language of the statute" and "the plain meaning of the statute [is derived] from its text and structure").

I.R.C § 6226 concerns judicial review of FPAAs under the TEFRA scheme. It provides, in relevant part, that "(1) each person who was a partner in [the] partnership at any time during [the partnership taxable] year shall be treated as a party to [the] action," and "(2) the court having jurisdiction of [the] action shall allow each such person to participate in the action." I.R.C. § 6226(c). Despite the Government's argument to the contrary, I.R.C. § 6226(c) does not provide that "partners, rather than the partnership itself, are the parties in a TEFRA partnership proceeding." Government's Br. 44–45. While it is true that I.R.C. § 6226(c) provides that a partner "shall be treated as a party" to the TEFRA judicial proceeding, that provision alone does not disqualify the partnership entity from also being a party to the proceeding.

The Government, however, avers that allowing a partnership to be a party would conflict with U.S. Tax Court precedent and the Rules of the Court of Federal Claims

---

the petition was filed on or after March 1, 2016. 81 Fed. Reg. 10,479, 10,489 (Mar. 1, 2016); Treas. Reg. § 301.7430-6. The petition in this case was filed in 2010.

("RCFC").[8] Government's Br. 40, 44. As the trial court acknowledged, the Tax Court has, at least on one occasion, interpreted I.R.C. § 6226(c) as standing for the proposition that "the partners, rather than the partnership entity, are the parties in a TEFRA proceeding." *BASR P'ship*, 130 Fed. Cl. at 302 (quoting *Foothill Ranch Co. P'ship v. Comm'r*, 110 T.C. 94, 99 (1998)). Our view, however, is that the Tax Court's interpretation improperly converts an inclusive statutory provision into an exclusive one. Moreover, we note that the Tax Court has also said that "the partners and the tax matters partner, rather than the partnership entity itself, are the *essential* parties in a partnership audit and litigation procedure," leaving open the possibility that a partnership could be a non-essential party. *See Chef's Choice Produce, Ltd. v. Comm'r*, 95 T.C. 388, 395 (1990) (emphasis added).

Regardless, we are not bound by Court of Federal Claims Rules or Tax Court decisions. In fact, this court previously explained that "[t]he tax matters partner . . . represents the partnership in partnership-level judicial proceedings, but the individual limited partners . . . are also deemed to be parties to the proceeding." *Conway v. United States*, 326 F.3d 1268, 1271 (Fed. Cir. 2003) (internal citation omitted). Other courts, moreover, have also acknowledged that the partnership participates in partnership-level TEFRA proceedings through its tax matters partner. *See, e.g., White & Case v. United States*, 22 Cl. Ct. 734, 736–37 (1991) (referring to the partnership, rather than the partner, as the plaintiff in a court proceeding concerning a petition for readjustment of partnership items pursuant to I.R.C. § 6226(a)). Because

---

8 RCFC Appendix F, Rule 6(a) ("[T]he partner who filed the complaint, the tax matters partner, and each person who satisfies the requirements of Code Sections 6226(c) and (d) . . . shall be treated as parties to the action.").

nothing in I.R.C. § 6226 or I.R.C. § 7430 prohibits a partnership from being a party to a partnership-level TEFRA judicial proceeding, we reject the Government's argument that BASR, due to its partnership status, cannot legally be a party to the proceeding.

To the contrary, as BASR argues, the statutes at issue suggest that a partnership can receive litigation costs in a TEFRA judicial proceeding. Specifically, under I.R.C. § 7430(c)(4)(A)(ii), a "prevailing party" must "meet[] the requirements of section 2412(d)(2)(B) of such title 28." That section states, in relevant part:

> "party" means (i) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed, or (ii) any owner of an unincorporated business, or *any partnership*, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed.

28 U.S.C. § 2412(d)(2)(B) (2012) (emphasis added). The fact that the Internal Revenue Code's cost-shifting statute incorporates a provision that sets specific requirements for partnerships suggests that Congress intended for partnerships to be eligible for costs under § 7430.

Indeed, the Government does not dispute that a court can award costs in a partnership-level proceeding. The Government's position is simply that the qualified offer rule can never result in a costs award in partnership-level cases. But I.R.C. § 7430 does not draw this distinction. Rather, the statute applies in any proceeding "in connection with the determination, collection, or refund of any tax." I.R.C. § 7430(a). Thus, we conclude that BASR can legally be a "party."

## B.  "In Issue"

The Government next argues that the trial court erred in determining that tax liability was "in issue" in the TEFRA partnership-level court proceeding.  Specifically, the Government asserts that the qualified offer rule does not apply to TEFRA partnership-level proceedings at all because each partner's tax liability amount is not "in issue" in such proceedings.  *See* I.R.C. § 7430(c)(4)(E)(ii)(II) (excluding from the qualified offer rule cases in which the amount of tax liability is not "in issue" during the court proceeding); Government's Br. 28.

The trial court found that the amount of tax liability was "in issue" because "[t]he partnership-level FPAA review proceeding conclusively determines the tax treatment of all partnership items, determining each individual partner's tax liability."  *BASR P'ship*, 130 Fed. Cl. at 303–04.  Although the Government does not appear to dispute that the tax treatment of partnership items affects each partner's individual tax liability, it contends that "[u]nder the plain terms of the qualified-offer rule, . . . that real, but indirect, link between the judgment and the tax liability is insufficient to support a fee award."  Government's Br. 31.  According to the Government, the amount of tax liability must be *determined* in the proceeding for it to be "in issue" in that proceeding.  *See* Government's Reply Br. 7–10.  BASR disagrees and argues that the amount of tax liability need be only indirectly "in issue" to avoid the qualified offer rule's exclusionary provision.  *See* Appellee's Br. 36.

To resolve the parties' dispute, we turn to the language of the statute to ascertain whether the *amount* of tax liability must be determined in order for it to be "in issue" for purposes of the qualified offer rule.  As previously discussed, we review the trial court's statutory interpretations de novo.  *Salman Ranch*, 573 F.3d at 1370.  We agree with the trial court that the statute does not require such a determination.

I.R.C. § 7430 does not define the phrase "in issue," and we are unaware of any special technical meaning under the tax laws. Thus, it is appropriate to construe the phrase according to its plain meaning. *FDIC v. Meyer*, 510 U.S. 471, 476 (1994). Black's Law Dictionary defines the term "issue" as "a . . . dispute between two or more parties." Black's Law Dictionary 907 (9th ed. 2009). It follows, therefore, that the plain meaning of "in issue" is simply "in dispute." Additionally, at least some courts have used the terms "in issue" and "at issue" interchangeably in certain contexts. *See, e.g.*, *Safeco Ins. Co. of Am. v. Vecsey*, 259 F.R.D. 23, 30 n.5 (D. Conn. 2009) ("The Connecticut Supreme Court has used the terms 'in issue' and 'at issue' interchangeably when discussing the implied-waiver-of-privilege doctrine . . . ."). The term "at issue" is defined in Black's Law Dictionary as "taking opposite sides; under dispute; in question." Black's Law Dictionary 144 (9th ed. 2009). In light of these consistent definitions, we view the plain and ordinary meaning of "in issue" as broader than the Government asserts and conclude that the phrase requires neither a calculation nor determination of tax liability amount. The Government has not pointed to anything in the statutory scheme that would warrant a narrower interpretation.

"TEFRA created a method for uniformly adjusting items of partnership income, loss, deduction, or credit that affect each partner." *Locke v. Comm'r*, 1996 Tax Ct. Memo LEXIS 558, at *5–6. "A partner's tax liability attributable to partnership items is determined at the partnership level, separate from the proceedings for determining deficiencies attributable to *nonpartnership* items." *Id.* (emphasis added). As the Tax Court has said, the proposition that in a partnership-level proceeding the court "make[s] determinations with respect to the items of income, gain, loss, or credit of the partnership, rather than the individual partners, . . . is to exalt form over substance." *See 1983 W. Reserve Oil & Gas Co. v. Comm'r*, 95 T.C. 51, 57 (1990).

C.  Paid or Incurred Litigation Costs

Prevailing parties may be awarded reasonable litigation costs "incurred" in connection with a court proceeding brought against the United States with respect to "the determination, collection, or refund of any tax, interest or penalty" under Title 26.  I.R.C. § 7430(a).  The Government argues that "BASR is . . . ineligible for an award under I.R.C. § 7430 because it did not 'pay or incur' any litigation costs."  Government's Br. 45.

Both parties agree that in order to "incur" costs, one must be obligated to pay them.  *See Pickholtz v. Rainbow Techs., Inc.*, 284 F.3d 1365, 1375 (Fed. Cir. 2002); Government's Br. 46; Appellee's Br. 40.  The trial court determined that "BASR 'incurred' litigation costs for purposes of I.R.C. § 7430, because it ha[d] an obligation to pay the attorney and paralegal fees and other costs charged by Sutherland Asbill [& Brennan LLP]."  *BASR P'ship*, 130 Fed. Cl. at 306.  The Government argues that the trial court erred because BASR had no such "legal obligation" to pay Sutherland, Asbill & Brennan LLP anything.  *See* Government's Br. 51.

The Government avers that the obligation to pay Sutherland belonged to only the Pettinatis because the "[e]ngagement letters were addressed to, and countersigned by, (1) William Pettinati, Sr., and Virginia Pettinati; and (2) William Pettinati, Jr., and his wife."  Government's Br. 46.  Additionally, "Sutherland's invoices were all addressed to Virginia and William Pettinati, Sr., not to BASR."  Government's Br. 47.  "And the Pettinatis paid those invoices out of their own funds:  Virginia and William Pettinati, Sr., paid two-thirds of the fees . . . [and] William Pettinati, Jr., paid the remaining one third."  *Id.*

The trial court acknowledged these arguments and found them unpersuasive because "under the terms of the Partnership Agreement, BASR is obligated to repay its Partners for litigation costs incurred on its behalf."  *BASR*

*P'ship*, 130 Fed. Cl. at 306. The court cited Section 2.5 of the Partnership Agreement, which provides that the Managing Partner—i.e., William Pettinati, Sr.—is entitled to "reimbursement for reasonable out-of-pocket expenses incurred by him on behalf of the Partnership or in pursuance of his duties as Managing Partner." *Id.*; J.A. 2394 (Partnership Agreement). The trial court also cited Section 9.2(a) of the Partnership Agreement:

> Each Partner shall, to the extent permitted by law, be indemnified and held harmless by the Partnership from and against any and all losses, claims, damages, liabilities, joint and several, expenses (*including reasonable legal fees and expenses*), . . . and all other amounts arising from any and all claims, costs, demands, actions, suits or proceedings, civil, criminal, administrative or investigative, in which the Partner may be involved.

J.A. 2399 (emphasis added). The trial court noted that although Section 9.2(c) limits indemnification "to the extent of any Partnership assets," *see BASR P'ship*, 130 Fed. Cl. at 307, BASR's inability to reimburse the partners for litigation costs advanced on its behalf does not absolve BASR of its *obligation* to reimburse its partners, *see id.*

The trial court also relied on Texas partnership law. The court found that "Texas law governs the obligations that BASR owes to its partners" because "Section 9.11 of the Partnership Agreement states that 'th[is] Agreement shall be governed by and construed in accordance with the laws of the State of Texas, including the [Texas Uniform Partnership] Act.'" *Id.* at 306 (quoting J.A. 2400 (Partnership Agreement)). Under Texas law, "[t]o the extent that the partnership agreement does not otherwise provide, [Chapter 152] and the other partnership provisions [of the Texas Business Organizations Code (TBOC)] govern the relationship . . . between the partners and the partnership." Tex. Bus. Org. Code Ann. § 152.002(a).

Thus, the trial court found that "even if the Partnership Agreement did not expressly provide that the partners were entitled to reimbursement, the TBOC obligates BASR to repay its partners for litigation costs incurred on its behalf." *BASR P'ship*, 130 Fed. Cl. at 307 (citing TBOC §§ 152.703(a), 11.052, and 11.055, which together provide that a person winding up a partnership's business may continue to prosecute or defend a civil court action or proceeding by or against the partnership in the name of and for and on behalf of the partnership).

The Government acknowledges BASR's Partnership Agreement and the TBOC, Government's Br. 50, but argues that (1) the partners did not advance the litigation costs on BASR's behalf but rather incurred those costs to pay for their own legal representation as separate parties to the litigation, and (2) any obligation that BASR may have had to reimburse the Pettinatis is purely theoretical because BASR has not reimbursed its partners and its partners have not requested such reimbursement, *id.* at 49–50.

"A partnership agreement is a contract, and is interpreted according to the principles of contract law." *Holmes v. Keets*, 153 F.2d 132, 134 (D.C. Cir. 1946); *Park Cities Corp. v. Byrd*, 534 S.W.2d 668, 672 (Tex. 1976) ("[W]e shall construe and interpret [the partnership] agreement pursuant to the applicable law of contracts."). Because contract interpretation is a question of law, we review the trial court's legal conclusions de novo. *Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1368 (Fed. Cir. 2004). If the provisions of a contract are clear and unambiguous, as they are here, we construe them according to their plain meaning. *Id.* at 1375–76.

We disagree with the Government. As to the Government's first argument, TEFRA partnership-level court proceedings under I.R.C. § 6226 are only "nominally brought in the name of a partner." H.R. Rep. No. 105-148, at 638

(1997).  To be sure, this court has previously interpreted I.R.C. § 6226 as "permit[ting] the 'tax matters partner' . . . to file a petition on behalf of the partnership to contest adjustments to partnership income made by the Internal Revenue Service."  *Transpac Drilling Venture, 1983-63 by Crestwood Hosps., Inc. v. United States*, 16 F.3d 383, 385 (Fed. Cir. 1994).  Consistent with that interpretation, Mr. Pettinati, Sr., as BASR's Tax Matters Partner, brought the partnership action on BASR's behalf to challenge the adjustments the IRS made to BASR's partnership return.

As to the Government's second argument, we simply fail to see its relevance.  The fact that BASR has not yet reimbursed its partners and that its partners have not yet asked for the reimbursement is immaterial to the question whether BASR is contractually *obligated* to reimburse or indemnify its partners under the Partnership Agreement.

We agree with the trial court that the Partnership Agreement obligates BASR to indemnify and reimburse the Pettinatis for reasonable legal fees and expenses arising from the TEFRA partnership-level court proceeding.  Section 9.2 obligates BASR to indemnify each partner for reasonable legal fees and expenses arising from any and all suits or proceedings in which the partner is involved.  J.A. 2399.  Section 2.5 obligates BASR to reimburse Mr. Pettinati, Sr., for his reasonable out-of-pocket expenses incurred on behalf of the partnership or in pursuance of his duties as Managing Partner.  J.A. 2394.  Under the Partnership Agreement, it is the Managing Partner's duty to serve as the Tax Matters Partner.  J.A. 2397.  As such, Mr. Pettinati, Sr., had a duty to act on the partnership's behalf, irrespective of his personal tax posture.  *See United States v. Martinez* (*In re Martinez*), 564 F.3d 719, 728–29 (5th Cir. 2009); *see also Comput. Programs Lambda, Ltd. v. Comm'r*, 89 T.C. 198, 205–06 (1987).

Mr. Pettinati, Sr., filed a petition for readjustment of BASR's partnership items under I.R.C. § 6226(a) and hired legal representation in connection with the consequent partnership-level proceeding. We agree with the trial court that Mr. Pettinati, Sr., acted on BASR's behalf in his capacity as BASR's Tax Matters Partner consistent with the Partnership Agreement. *See BASR P'ship*, 130 Fed. Cl. at 290. BASR, therefore, is responsible for the litigation costs associated with the partnership-level TEFRA proceeding.

## D. Real-Party-in-Interest

The Government avers that the trial court erred in awarding costs to BASR because the Pettinatis, not BASR, are the real-parties-in-interest in the TEFRA partnership-level proceeding. Government's Br. 54. The trial court, however, determined that BASR is the real-party-in-interest with respect to litigation costs because the Partnership Agreement and Texas law obligate it to pay those costs. *See BASR P'ship*, 130 Fed. Cl. at 308.

"The phrase, 'real party in interest,' is a term of art utilized . . . to refer to an actor with a substantive right whose interests may be represented in litigation by another." *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 934–35 (2009). The relevance of the real-party-in-interest doctrine to this case stems from 28 U.S.C. § 2412(d)(2)(B), which is partially incorporated into I.R.C. § 7430(c)(4)(E) and prohibits, inter alia, an individual whose net worth exceeds $2 million and a partnership whose net worth exceeds $7 million from obtaining an award under I.R.C. § 7430.

It is undisputed that Virginia and William Pettinati, Sr., are ineligible to directly recover litigation costs under I.R.C. § 7430 because their personal net worth exceeds

$2 million. Oral Arg. at 24:10–24:16.[9] Also undisputed is the fact that BASR's net worth does not exceed $7 million. Government's Br. 50; J.A. 1956 (affidavit of William Pettinati, Sr., certifying that BASR had "zero assets" at the time the complaint was filed). Thus, in order for Mr. and Mrs. Pettinati, Sr., to recover their out-of-pocket litigation costs, they must do so indirectly through reimbursement from BASR.

Relying on *Unification Church v. Immigration & Naturalization Service*, 762 F.2d 1077, 1082 (D.C. Cir. 1985) (holding that "the court shall consider only the qualification[s] . . . of those parties that will be themselves liable for fees if court-awarded fees are denied"), the Government argues that "the Pettinatis would be the only beneficiaries of any award in this case." Government's Br. 54. According to the Government, the Pettinatis would be liable for the litigation costs if an award is denied. *See id.*; *see also* J.A. 2067–72 (law firm engagement letters); J.A. 2399 (section of the Partnership Agreement providing that "indemnification . . . shall be to the extent of any Partnership Assets"). And the Pettinatis ultimately would recover their litigation costs—either as a consequence of the Partnership Agreement or due to the inherent, pass-through nature of partnerships—if an award is granted. *See* Government's Br. 54. As a consequence, argues the Government, the Pettinatis are the real-parties-in-interest. *Id.* The dissent agrees. Dissenting Op. at 2, 6. We do not.

In *Unification Church*, the D.C. Circuit applied the real-party-in-interest doctrine "to carry out the congressional intent" with regard to § 2412(d). 762 F.2d at 1082. The court found that the real-party-in-interest was the

---

[9]    The Government disputed before the trial court whether William Pettinati, Jr.'s gift trust satisfies the net-worth requirements, but the trial court made no findings on that issue. *See BASR P'ship*, 130 Fed. Cl. at 308.

Church, not the employees who applied for attorney's fees, because the Church had agreed to pay for the employees' attorney's fees. *See id.*; *see also Love v. Reilly*, 924 F.2d 1492, 1494 (9th Cir. 1991).

Notably, at least one of our sister circuits has rejected the D.C. Circuit's application of the real-party-in-interest doctrine to determine eligibility for fees and costs under § 2412(d). *See, e.g.*, *Nail v. Martinez*, 391 F.3d 678, 683 (5th Cir. 2004) (stating that the D.C. Circuit's "resort to the legislative history for the inclusion of a non-statutory requirement for EAJA eligibility was unnecessary" because "Congress has precisely defined the term 'party'" and "[t]here is no ambiguity in the statutory language that would warrant looking beyond the plain language of the statute").

Other circuits, however, have simply reasoned, without endorsing the application of the real-party-in-interest doctrine when performing a § 2412(d) analysis, that the doctrine does not bar recovery in a particular case. *See, e.g.*, *Love*, 924 F.2d at 1494 (the Ninth Circuit concluding that the real-party-in-interest doctrine did not bar the association from collecting attorney's fees because the association's members were not the real-parties-in-interest, as there was no agreement making them liable for the attorney's fees); *Estate of Palumbo v. United States*, 675 F.3d 234, 241–44 (3d Cir. 2012) (the Third Circuit concluding that the real-party-in-interest doctrine did not support a determination that the Charitable Trust was the real-party-in-interest because the trust "had no . . . arrangement that made it liable or responsible for the [legal] fees"). That is the course that we take here.

Even assuming the real-party-in-interest doctrine can bar recovery of fees in some cases, we agree with the trial court's determination that "the 'real-party-in-interest' doctrine is not a bar to recovery" in *this* case. *BASR P'ship*, 130 Fed. Cl. at 308. As explained above, BASR is liable

under the Partnership Agreement and the TBOC for the litigation costs arising from the TEFRA partnership-level court proceeding. So, if we were to deny an award here, BASR would be liable for the costs that the partners advanced on its behalf—even though BASR, presumably, would be unable to reimburse its partners. If we were to grant an award, however, the Government would be liable for those costs. In light of the foregoing, and the fact that the plain language of I.R.C. § 7430 and 28 U.S.C. § 2412 does not explicitly prohibit an insolvent party from obtaining an award, we conclude that BASR would be the beneficiary of the award. Accordingly, the real-party-in-interest doctrine, as applied in *Unification Church*, does not prevent BASR from obtaining an award under I.R.C. § 7430.

### E. Abuse of Discretion

Finally, the Government argues that the trial court abused its discretion by awarding litigation costs under the qualified offer rule because the partners' $1.00 offer to the Government "was not made in a good-faith attempt to produce a settlement," and was submitted solely to shift fees to the Government in the event BASR and the BASR partners prevailed. Government's Br. 56–57. BASR responds that the $1.00 offer was a good-faith attempt to settle a case that BASR believed the Government could not win. Appellee's Br. 53. We disagree with the Government.

This court has not previously addressed the standard of review to apply to a district court's decision to grant an I.R.C. § 7430 award, but several of our sister circuits have reviewed such rulings for an abuse of discretion. *See, e.g.*, *Moulton v. United States*, 429 F.3d 352, 355 (1st Cir. 2005) (finding that a district court's award or denial of attorneys' fees under I.R.C. § 7430 should be reviewed for abuse of discretion); *Kaffenberger v. United States*, 314 F.3d 944, 960 (8th Cir. 2003) (same); *United States v. Yochum (In re Yochum)*, 89 F.3d 661, 670 (9th Cir. 1996) (same); *Michael A. Cramer, MAI, SRPA, Inc. v. United States*, 47 F.3d 379,

382 (10th Cir. 1995) (same); *Rasbury v. IRS* (*In re Rasbury*), 24 F.3d 159, 166 (11th Cir. 1994) (same). We follow suit here and review the trial court's decision to award BASR litigation costs under I.R.C. § 7430 for an abuse of discretion.

To constitute an abuse of discretion, the trial court's decision must be clearly unreasonable, arbitrary or fanciful, or based on clearly erroneous findings of fact or erroneous conclusions of law. *Hohenberg Bros. Co. v. United States*, 301 F.3d 1299, 1303 (Fed. Cir. 2002). In exercising its discretion to grant BASR's request for reasonable litigation costs, the trial court rejected the Government's argument that the $1.00 settlement offer was not made in good faith. The trial court recognized that I.R.C. § 7430 "does not require any minimum amount or define the parameters of a 'reasonable' offer, nor does it require that an offer be for a certain percentage of the taxpayer's purported liability." *BASR P'ship*, 130 Fed. Cl. at 305. The trial court also noted that the Government did not identify any amount that BASR could have offered that would have been reasonable. *Id.*

No evidence or argument currently before us persuades us that the trial court's determination was clearly unreasonable, arbitrary, fanciful, based on clearly erroneous findings of fact, or based on erroneous conclusions of law. We therefore conclude that the trial court did not abuse its discretion.

## IV

We have considered the Government's remaining arguments and find them unavailing.[10] Accordingly, the order

---

[10] We acknowledge the discussion during oral argument on the issue of whether BASR cannot avail itself of the qualified offer rule because it is a partnership and not a taxpayer, as required by I.R.C. § 7430(g). Oral Arg. at

of the U.S. Court of Federal Claims is affirmed.

### AFFIRMED

Costs

The parties shall bear their own costs.

---

32:08–34:42.  However, because that issue was not raised or briefed on appeal here or before the trial court, we do not consider it.

# United States Court of Appeals
## for the Federal Circuit

---

**BASR PARTNERSHIP, WILLIAM F. PETTINATI, SR., TAX MATTERS PARTNER,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

---

2017-1925

---

Appeal from the United States Court of Federal Claims in No. 1:10-cv-00244-SGB, Judge Susan G. Braden.

---

WALLACH, *Circuit Judge*, dissenting.

The majority properly recognizes that the real party in interest doctrine has been applied to bar recovery of litigation costs and attorney fees in tax proceedings under Internal Revenue Code ("I.R.C.") § 7430 (2012) and 28 U.S.C. § 2412 (2012), but errs in "agree[ing] with the [U.S. Court of Federal Claims'] determination that 'the . . . doctrine is not a bar to recovery' in *this* case." Maj. Op. 20 (quoting *BASR P'ship v. United States*, 130 Fed. Cl. 286, 308 (2017)). In arriving at its conclusion, the majority relies on precedent that is not only inapposite to its reasoning, but that explicitly contradicts it. If, as here, there exists an express agreement making other parties or non-parties liable for a party's litigation costs and attorney fees and providing that

they will receive any court award of costs and fees, then those parties and non-parties are the real parties in interest who must demonstrate eligibility for such an award. The Court of Federal Claims, therefore, erred in determining Appellee BASR Partnership ("BASR") is the real party in interest, *see BASR*, 130 Fed. Cl. at 308, and awarding BASR litigation costs and attorney fees, *see id.* at 313–14. The proper course is to vacate the Court of Federal Claims' real party in interest determination and remand the case for findings regarding whether the actual real parties in interest, i.e., William F. Pettinati, Sr., Virginia Pettinati, and William F. Pettinati, Jr. (collectively, "the Pettinatis"), who are partners in BASR and liable for the litigation costs and attorney fees arising from this case, satisfy the statutory eligibility requirements for the award of litigation costs and attorney fees under § 7430 and § 2412. Accordingly, I respectfully dissent.

## DISCUSSION

The Pettinatis, not BASR, are the real parties in interest with regard to litigation costs and attorney fees in this case because they are liable for the financial obligations that resulted from the U.S. Internal Revenue Service's untimely issuance of a notice of final partnership administrative adjustment to Appellee Mr. Pettinati, Sr., the tax matters partner of BASR, and because they will receive the costs and fees awarded by the Court of Federal Claims. The Pettinatis, rather than BASR, must, therefore, fulfill the criteria under § 7430 and § 2412 for the award of litigation costs and attorney fees. In order to recover these costs and fees "[i]n any administrative or court preceding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under" the Internal Revenue Code, a party must be a "prevailing party." I.R.C. § 7430(a). To be a *prevailing* party, a party must, inter alia, "meet[] the requirements of [28 U.S.C. §] 2412(d)(2)(B)." *Id.* § 7430(c)(4)(A)(ii). Section 2412(d)(2)(B) allows recovery by

"an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed" or "any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 . . . and which had not more than 500 employees at the time the civil action was filed."

In addition, we have invoked the real party in interest doctrine[1] with regard to § 2412, and stated that, "[i]f the party seeking legal fees is obligated to pay them to a third party which is not the professional providing the legal service, an award under [§ 2412] has been deemed inappropriate." *Phillips v. Gen. Servs. Admin.*, 924 F.2d 1577, 1583 n.5 (Fed. Cir. 1991). Pursuant to the real party in interest doctrine, we must examine the parties or non-parties to whom any award of costs and fees *actually accrues* to determine whether *they* are statutorily eligible for such an award. *See Wall Indus., Inc. v. United States*, No. 89-1236, 1989 WL 81684, at *1 (Fed. Cir. July 26, 1989) (per curiam) (affirming the Court of Federal Claims' conclusion that a party "was not the prevailing party" because it "did not incur th[e legal] fees or have any responsibility to do so and derived no benefit from the judgment," and determining that the "real prevailing party in interest [that] paid the fees" and "received the proceeds from the judgment" "must . . . satisfy [the] various eligibility requirements of

---

[1] "The phrase, 'real party in interest,' is a term of art utilized in federal law to refer to an actor with a substantive right whose interests may be represented in litigation by another." *United States ex rel. Eisenstein v. City of N.Y.*, 556 U.S. 928, 934–35 (2009); *see Unification Church v. Immigration & Naturalization Serv.*, 762 F.2d 1077, 1081 (D.C. Cir. 1985) ("The [real party in interest] doctrine is often relevant to which entities may properly press a claim or an appeal.").

[§ 2412] to recover"). This approach is consistent with several of our sister circuits, including the Third, Eighth, Ninth, and D.C. Circuits. *See Estate of Palumbo v. United States*, 675 F.3d 234, 242 (3d Cir. 2012) (determining that "a legal arrangement that ma[kes a party] responsible for [legal] fees" makes it the real party in interest in attorney fees proceedings under § 7430 and § 2412); *Nat'l Ass'n of Mfrs. v. Dep't of Labor*, 159 F.3d 597, 603 (D.C. Cir. 1998) ("[T]he 'real party in interest' doctrine applies [under § 2412] when an ineligible party pays the fees for an eligible party" or when "an ineligible non-party (such as an association member) . . . pays the fees of a party (such as an association)," and "bar[s] fee awards from which only ineligible parties [and non-parties] would benefit" (emphases and footnote omitted)); *Love v. Reilly*, 924 F.2d 1492, 1494 (9th Cir. 1991) (providing that individual members of an association "would be the real party in interest in the [§ 2412] fee litigation . . . if they were liable for the [association's] attorney[] fees"); *SEC v. Comserv Corp.*, 908 F.2d 1407, 1416 (8th Cir. 1990) (determining that "a . . . party meeting the financial qualifications" of § 2412 was nevertheless ineligible to receive an award of attorney fees because its attorney fees were "fully paid by a noneligible organization" and it was, therefore, not the real party in interest).

Application of the real party in interest doctrine to the limitations of § 2412 is appropriate in light of Congress's intent in enacting this statute. Pertinently, Congress found that "certain individuals, partnerships, corporations, and labor and other organizations may be deterred from seeking review of, or defending against, unreasonable governmental action because of the expense involved in securing the vindication of their rights in civil actions and in administrative proceedings." Equal Access to Justice Act, Pub. L. No. 96–481, § 202(a), 94 Stat. 2321, 2325 (1980). Accordingly, when § 2412 was enacted, its stated purpose was "to diminish the deterrent effect of seeking review of,

or defending against, governmental action by providing *in specified situations* an award of attorney fees, expert witness fees, and other costs against the United States." *Id.* § 202(c)(1) (emphasis added). As the D.C. Circuit has recognized, "a congressional intention to limit the scope of [§ 2412] to individuals or to small entities that find particularly burdensome the ever-rising costs of litigation" is evident, but "not to subsidize . . . the purchase of legal services by large entities easily able to afford legal services." *Unification Church*, 762 F.2d at 1082; *see Wall Indus.*, 1989 WL 81684, at *1 ("[T]he possibility of an ineligible party using a nominally eligible party as a front to obtain fees otherwise unavailable is contrary to [§ 2412] and its legislative history and purpose and cannot be countenanced."); *see also Foley Constr. Co. v. U.S. Army Corps of Eng'rs*, 716 F.2d 1202, 1203 (8th Cir. 1983) ("The purpose of [§ 2412] is to diminish the deterrent effect of the expense involved in seeking review of, or defending against, unreasonable government action." (citation omitted)).

There is no dispute that the Pettinatis are legally obligated to pay the litigation costs and attorney fees arising from this case. *See* J.A. 2067–69 (providing the Fees and Costs Agreement between, inter alia, Mr. Pettinati, Jr. and counsel for BASR and Mr. Pettinati, Sr.), 2070–72 (providing the same with regard to Mr. Pettinati, Sr. and Ms. Pettinati), 2073–282 (providing the invoices for legal services provided by counsel for BASR and Mr. Pettinati, Sr. billed to Mr. Pettinati, Sr. and Ms. Pettinati). Indeed, the record demonstrates that the Pettinatis *actually paid* the litigation costs and attorney fees. J.A. 2283–91 (providing the Billing and Payment Report from counsel for BASR and Mr. Pettinati, Sr. indicating amounts charged and payments made by Mr. Pettinati, Sr. and Mr. Pettinati, Jr.), 2327–57 (providing the credit card statements indicating payments made by Mr. Pettinati, Sr. and Mr. Pettinati, Jr. to counsel for BASR and Mr. Pettinati, Sr.). In addition, BASR's partnership agreement obligates BASR to

indemnify the Pettinatis, as partners in BASR, for these financial obligations and outlays. *See* J.A. 2392 (identifying, in the Partnership Agreement, the Pettinatis as partners), 2399 (stating, in the Partnership Agreement, that "[e]ach Partner *shall*, to the extent permitted by law, *be indemnified and held harmless by* [*BASR*] from and against any and all . . . expenses (including reasonable legal fees and expenses) . . . arising from any and all . . . suits or proceedings . . . in which the Partner may be involved" (emphases added)).    Thus, pursuant to the Partnership Agreement and the Pettinatis' agreements to pay the fees and costs of counsel for BASR and Mr. Pettinati, Sr., the Pettinatis, not BASR, stand to benefit from the Court of Federal Claims' award of litigation costs and attorney fees, and are, therefore, the real parties in interest. *See Phillips*, 924 F.2d at 1583 n.5 (stating that, "[i]f the party seeking legal fees is obligated to pay them to a third party which is not the professional providing the legal service, an award under [§ 2412] has been deemed inappropriate"); *Unification Church*, 762 F.2d at 1082 ("[T]he beneficiary of any award of fees . . . can fairly be characterized as the real party in interest.").

The situation here mirrors that in *Unification Church* upon which the majority relies in resolving the real party in interest issue. *See* Maj. Op. 20 (basing its resolution of this issue on "the real-party-in-interest doctrine[] as applied in *Unification Church*"). There, three individuals and a church sought attorney fees from the Government. *Unification Church*, 762 F.2d at 1079. However, per an arrangement with their shared counsel, the church was solely liable for attorney fees. *Id.* at 1082. Thus, "[w]hatever the outcome of [the D.C. Circuit's] consideration of fees," the individuals would "not pay the fees." *Id.* If fees were not awarded, the church would pay, and if they were, the Government would pay. *Id.* The church was, therefore, determined to be "the beneficiary of any award of fees, not the individual appellants, and . . . the [c]hurch [was]

characterized as the real party in interest." *Id.* "[I]f the [c]hurch would not itself qualify [for a fee award], then to allow the presence of the individual plaintiffs to result in a fee award would allow the [c]hurch to receive free legal services courtesy of a statute that intended to exclude the [c]hurch from its scope." *Id.* at 1083. Similarly, had the Court of Federal Claims not awarded costs and fees here, the Pettinatis would have paid. *See* J.A. 2067–72. The Court of Federal Claims, however, awarded costs and fees, so Appellant the United States ("Government") must pay. *See BASR P'ship*, 130 Fed. Cl. at 313. Under *Unification Church*, the Pettinatis are the real parties in interest, not BASR. *See* 762 F.2d at 1082–83.

As a result of its errant conclusion that BASR is the real party in interest, the Court of Federal Claims limited its consideration of net worth under § 7430(c)(4)(A)(ii) and § 2412(d)(2)(B) to BASR, rather than the Pettinatis. *See BASR P'ship*, 130 Fed. Cl. at 308 ("[T]he court need not consider the net worth of BASR's individual partners . . . ."). If the Pettinatis each individually have a net worth exceeding $2 million, then they are not eligible for an award of litigation costs and attorney fees, *see* I.R.C. § 7430(c)(4)(A)(ii); 28 U.S.C. § 2412(d)(2)(B), and they may be improperly receiving free legal services courtesy of a statute intended to exclude them from its scope, *see Nat'l Ass'n of Mfrs.*, 159 F.3d at 603 ("[I]f an association were no more than a 'front' or a 'sham' through which ineligible entities pursued litigation and recovered fees, it would be appropriate to pierce the associational veil and look to the real parties in interest.").

The majority disregards this possibility and fails to correctly apply the real party in interest doctrine by stating that the Ninth Circuit, in *Love*, has "reasoned, without endorsing the application of the real-party-in-interest doctrine when performing a § 2412(d) analysis, that the doctrine does not bar recovery in a particular case." Maj. Op. 19. *Love*, however, is not only unsupportive of the

majority's assessment, but expressly contradicts it. In *Love*, an association sought attorney fees against the Government and was eligible for such an award under § 2412. 924 F.2d at 1493. The Government there argued that the real parties in interest were the association's members since they would benefit from any award of fees, and sought to "requir[e] the association to prove that each of its members [was] individually eligible for fees." *Id.* at 1494. The Ninth Circuit disagreed and stated, in relevant part, that "[t]he members . . . would be the real part[ies] in interest . . . *only if they were liable for the* [*association*]*'s attorney*[] *fees*," and that "[n]othing in the record points to *such an agreement*." *Id.* (emphases added); *see Estate of Palumbo*, 675 F.3d at 242 (determining that the presence of "a legal arrangement that ma[kes a party] responsible for . . . fees" is key to an individual or entity being the real party in interest).[2] Here, the Pettinatis are liable for

---

[2]    Although, the majority also cites *Estate of Palumbo* to support its proposition that our sibling circuits have not endorsed the real party in interest doctrine in holding "that the [real party in interest] doctrine does not bar recovery in a particular case," Maj. Op. 19, I disagree. In *Estate of Palumbo*, the Third Circuit comprehensively assessed whether the real party in interest doctrine obligated it to look to the qualifications of a non-party in determining whether, under § 2412, the award of attorney fees was proper, and determined that the doctrine did not by distinguishing cases in which the doctrine was interpreted to impose such an obligation. *See* 675 F.3d at 242 (concluding that "judicial interpretations of the real-party-in-interest doctrine pertaining to [§ 2412] do not militate in favor of" looking to a non-party's qualifications). Contrary to the majority's assertion, *Estate of Palumbo* is an example of one of our sibling circuits *applying* the real party in interest doctrine in the context of a § 2412 analysis, and

BASR's litigation costs and attorney fees due to their agreements to pay the fees and costs of counsel for BASR and Mr. Pettinati, Sr. *See* J.A. 2067–72. Thus, based on its statements in *Love*, the Ninth Circuit would determine persons like the Pettinatis to be the real parties in interest who must satisfy the requirements of § 7430 and § 2412 to be eligible for the award of costs and fees.[3]

CONCLUSION

In failing to apply the real party in interest doctrine to this case, the majority relies on precedent that actually contradicts its conclusion that the doctrine "does not prevent BASR from obtaining an award under . . . § 7430." Maj. Op. 20. Rather, the record and precedent make clear that the Pettinatis, not BASR, are the real parties in interest. Accordingly, the Court of Federal Claims' determination that BASR is the real party in interest should be vacated and the case remanded for findings with regard to the Pettinatis' fulfillment of the statutory requirements

---

determining that the doctrine did not require appraisal of the qualifications of a non-party for the award of attorney fees.

[3] The majority also relies on "the fact that the plain language of . . . § 7430 and . . . § 2412 does not explicitly prohibit an insolvent party from obtaining an award" to reach its conclusion. Maj. Op. 20. This, however, is irrelevant to deciding the real party in interest issue, which solely involves discerning to whom any costs and fees award accrues, regardless of solvency. *See, e.g., Nat'l Ass'n of Mfrs.*, 159 F.3d at 603 (providing that the real party in interest doctrine applies when ineligible parties or non-parties pay the fees for an eligible party, and "bar[s] fee awards from which only ineligible parties [and non-parties] would benefit").

under § 7430 and § 2412 for the award of litigation costs and attorney fees.  For these reasons, I respectfully dissent.